UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FAIZ KHAN M.D.,

                              Plaintiff,

  -against-

JAMES MCDONALD, MD, in his official
capacity as Commissioner of NYS
Department of Health;
JOSEPH A. GIOVANNETTI,
in his official capacity as Director of Bureau of
Investigations, NYS Department of Health;
LAWRENCE BURWELL,
in his official capacity investigator,
New York State Department of Health;
BRIAN CRUZ, in his official
his capacity as investigator, New York
State Department of Health;
"JOHN DOE" and/or "MARY ROE,"
the last two names being fictitious whose
identity is unknown to the Plaintiff, the
individual(s) intended being the director
or head officer of the NYS Department
of Health Immunizations Bureau,

                              Defendants
------------------------------------------------------------X

Case 2:24-cv-04745 (JMA) (ST)

Electronically Filed

## **DECLARATION OF LAWRENCE BURWELL**

    Lawrence Burwell declares, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and correct:

    1.    I am an investigator within the Bureau of Investigations at the New York State Department of Health. I have served in this capacity since December 2023. As an investigator within the Bureau of Investigations, I report directly to the Director of the Bureau of Investigations, Joseph Giovannetti. I am familiar with the facts set forth herein based upon my personal knowledge.

2. On April 29, 2024, and June 12, 2024, Investigator Brian Cruz and I interviewed Dr. Khan at his medical practice, Advanced Medicine of Long Island, located at 180 Michael Drive, Syosset, New York 11791. Both interviews were at the direction of Director Giovannetti. Investigator Cruz and I wore business suits on both occasions, which is standard dress code for investigators with the Bureau of Investigations when interacting with the public, including the subjects of our investigations. We identified ourselves to Dr. Khan using Department of Health business cards no different than those issued to any Department of Health employee.

3. Like all investigators with the Bureau of Investigations, Investigator Cruz and I are unsworn civilian investigators; accordingly, we displayed no firearms, handcuffs, handheld radios, or other equipment of the type that is typically associated with police or other members of law enforcement. I had my Department-issued iPhone and I used it at various times throughout the interaction with Dr. Khan. Although my iPhone can serve as an audio-recording device, I did not use it for that purpose during either visit. To my knowledge, the interaction with Dr. Khan was not recorded in any way except for the photographs we took inside Dr. Khan's office.

4. During both visits, Dr. Khan agreed to speak with us, invited us into and around his office, and allowed us to look inside the refrigerator where he stores vaccines and to take photographs. With regard to photographs in particular, I first asked Dr. Khan if I could take them, which is my standard practice, and he answered yes. Altogether, we were in Dr. Khan's office for less than an hour during the first visit and approximately 30 minutes during the second follow-up visit. On both occasions, some of the time spent inside the office was attributed to Dr. Khan continuing to interact with patients and perform other professional tasks unrelated to our visit while we waited. During both visits, we found Dr. Khan to be accommodating and cooperative.

5.      Dr. Khan expressed no objection to our presence during either visit and did not object to us taking photographs inside his office. Dr. Khan never asked us to leave his office or to stop the interview and he never requested that his attorney be present. In fact, he never mentioned being represented by an attorney at all. At some point in our interaction, he told us, in sum and substance, that he was happy to cooperate with us because he had nothing to hide and wanted our inquiry to be over as quickly as possible. Our interpersonal interactions with Dr. Khan during both visits were professional, cordial, and generally unremarkable. Both visits ended amicably.

6.      During our visits with Dr. Khan, Investigator Cruz and I observed over a dozen expired vaccines – kept separate from unexpired vaccines – in a refrigerator at Dr. Khan's practice. Included were vaccines that had expired as early as September 2021 and, most recently, in November 2022. We photographed these vials in Dr. Khan's presence and with his consent.

7.      During our visits with Dr. Khan, Investigator Cruz and I asked questions and discussed with Dr. Khan the Department of Health's concerns about the accuracy of his reporting of vaccination information to NYSIIS, including the reporting of possibly expired lot numbers and untimely entry of vaccination information into NYSIIS. Our approach was frank, direct, and forthcoming; at no time did we attempt investigative subterfuge or trickery of any kind, and we made no threats or promises whatsoever.

8.      On June 12, 2024, at the end of our second visit with Dr. Khan and just before leaving his office, we served him with a subpoena for certain records. We did this at the direction of Director Giovannetti, who had provided us with a signed copy of the subpoena prior to our visit. Neither me nor Investigator Cruz was involved in drafting the subpoena and we did not ask nor expect Dr. Khan to comply with its demands in our presence. After serving the subpoena, we left.

Dated: September 20, 2024

_____
LAWRENCE BURWELL