UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FAIZ KHAN M.D.,

                         Plaintiff,

      -against-                                   Case 2:24-cv-04745 (JMA) (ST)

JAMES MCDONALD, MD, in his official                Electronically Filed
capacity as Commissioner of NYS
Department of Health;
JOSEPH A. GIOVANNETTI,
in his official capacity as Director of Bureau of
Investigations, NYS Department of Health;
LAWRENCE BURWELL,
in his official capacity investigator,
New York State Department of Health;
BRIAN CRUZ, in his official
his capacity as investigator, New York
State Department of Health;
"JOHN DOE" and/or "MARY ROE,"
the last two names being fictitious whose
identity is unknown to the Plaintiff, the
individual(s) intended being the director
or head officer of the NYS Department
of Health Immunizations Bureau,

                         Defendants
-------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR A PRELIMINARY
## <u>INJUNCTION AND TO QUASH DEFENDANTS' SUBPOENA</u>

                               LETITIA JAMES
                               Attorney General
                                State of New York
                               <u>Attorney for Defendants</u>
                               28 Liberty Street – 17th Floor
                               New York, New York 10005
                               (212) 416-6019

JAMES MIRRO
Assistant Attorney General
   <u>of Counsel</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................ 2

    I.    New York State's Immunization Information
          System Is Codified In New York's Public Health Law ........................................... 2

    II.    Defendants Are Authorized By The Public Health Law
          To Conduct Investigations And To Issue Subpoenas ............................................. 5

    III.    After Investigation Of Khan's Immunization
          Practices, Khan's Access To NYSIIS Is Suspended .............................................. 5

ARGUMENT ................................................................................................................. 7

THE PLAINTIFF'S MOTIONS FOR A PRELIMINARY INJUNCTION
AND TO QUASH THE SUBPOENA SHOULD BE DENIED ........................................ 7

    I.    The Court Should Deny Khan's Motion For
          An Order Reinstating His Access To NYSIIS ...................................................... 8

          A.   Khan Has No Property Interest In Access To NYSIIS .................................. 9

          B.   Khan Has No Liberty Interest In Access To NYSHIIS ................................ 14

    II.    The Court Should Deny Khan's Motion For An Order
          Enjoining Defendants From Continuing The Investigation ................................... 17

    III.    The Court Should Deny Khan's Motion For An Order Enjoining
          Defendants From Enforcing The Subpoena And Quashing The Subpoena .......... 21

    IV.    The Public Interest And Balance Of Equities Weigh Heavily
          Against Granting A Preliminary Injunction In Favor Of Khan ............................ 27

CONCLUSION ............................................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Ahlers v. Rabinowitz,*
    684 F.3d 53 (2d Cir. 2012)................................................................................16

*Bertuglia v. City of New York,*
    839 F. Supp. 2d 703 (S.D.N.Y. 2012)........................................................ 18-19

*Board of Regents v. Roth,*
    408 U.S. 564 (1972)..............................................................................9, 12, 14

*Cacchillo v. Insmed,*
    638 F.3d 401 (2d Cir. 2011)....................................................8, 16, 21, 26

*Cameron v. Zucker,*
    2017 WL 2462692 (S.D.N.Y. 2017) (Koeltl, J.)..................................21, 30

*Castle Rock v. Gonzalez,*
    545 U.S. 748 (2005)..............................................................................10, 12

*Chalfy v. Turoff,*
    804 F.2d 20 (2d Cir. 1986)..........................................................................18

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983)................................................................................17, 22

*Conant v. Walters,*
    309 F.3d 629 (9th Cir. 2002) ......................................................................25

*Conn v. Gabbert,*
    526 U.S. 286 (1999)......................................................................... 14-15, 25

*Findlay v. MTA Bus Co.,*
    124 N.Y.S.3d 193 (1st Dep't 2020) ............................................................11

*Fishermen's Finest v. United States,*
    155 Fed. Cl. 576 (2021), *aff'd*, 59 F.4th 1269 (Fed. Cir. 2023) .............13

*Frid v. McDonald,*
    222 A.D.3d 520 (1st Dep't 2023) ...............................................................24

*Friends v. Town of East Hampton,*
    841 F.3d 133 (2d Cir. 2016).....................................................................8, 27

*Garland v. New York City Fire Department,*
    574 F. Supp. 3d 120 (E.D.N.Y. 2021) ........................................................30

*Green v. Hilliard,*
    2015 WL 8664175 (D. Conn. 2015) ...............................................................13, 15

*Guan v. Mayorkas,*
    530 F. Supp. 3d 237 (E.D.N.Y. 2021) (Chen, J.) ..........................................17, 22

*Guettlein v. United States,*
    577 F. Supp. 3d 96 (E.D.N.Y. 2021) ......................................................13, 15, 30

*Horowitz v. Zucker,*
    172 A.D.3d 538 (1st Dep't 2019) ........................................................................24

*In re Decker,*
    760 N.Y.S.2d 908 (3d Dep't 2003) ......................................................................11

*In re Gimbel,*
    77 F.3d 593 (2d Cir. 1996) .............................................................................23-24

*ISS Action v. Port Authority,*
    161 Fed. Appx. 120 (2d Cir. 2005) ......................................................................12

*Kahn v. Inspector General,*
    848 F. Supp. 432 (S.D.N.Y. 1994) ......................................................................13

*Kelly Kare, Ltd. v. O'Rourke,*
    930 F.2d 170 (2d Cir. 1991) .....................................................................10, 12, 15

*Kelly v. New York State,*
    2021 WL 2333349 (E.D.N.Y. 2021), *aff'd*, 2022 WL 1210665 (2d Cir. 2022) ..........16, 21, 26

*Los Angeles v. Patel,*
    576 U.S. 409 (2015) ............................................................................................23

*Maniscalco v. New York City DOE,*
    563 F. Supp. 3d 33 (E.D.N.Y. 2021), *aff'd*, 2021 WL 4814767 (2d Cir. 2021) ....................30

*Maple Avenue v. Town of North Haven,*
    924 F.Supp.2d 392 (D. Conn. 2013) ..............................................................10, 13

*Moore v. Consolidated Edison,*
    409 F.3d 506 (2d Cir. 2005) ..............................................................................7, 9

*Newell v. Holder,*
    579 Fed. Appx. 53 (2d Cir. 2014) .......................................................................11

*Patel v. Bassett,*
    Index No. 154347/2022 .......................................................................................23

*Pennhurst v. Halderman*,
    465 U.S. 89 (1984)..................................................................................26

*People v. Actavis*,
    787 F.3d 638 (2d Cir. 2015)......................................................................8

*Plaza Health v. Perales*,
    878 F.2d 577 (2d Cir. 1989)...........................................................10, 12

*Rosenbaum v. Atlas*,
    887 N.Y.S.2d 93 (1st Dep't 2009) ...........................................................11

*S&D v. Goldin*,
    844 F.2d 962 (2d Cir. 1988)............................................................13, 15

*S.E.C. v. Jerry T. O'Brien, Inc.*,
    467 U.S. 735 (1984)..................................................................................17

*See v. Seattle*,
    387 U.S. 541 (1967)..................................................................................22

*T.C. v. New York State*,
    2022 WL 17689841 (S.D.N.Y. 2022)...........................................16, 21, 26, 30

*United States v. Joseph*,
    2024 WL 1827291 (2d Cir. 2024)..............................................................11

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982)..................................................................................27

*Winter v. NRDC*,
    555 U.S. 7 (2008).......................................................................................7

*Zigmund v. Solnit*,
    199 F.3d 1325 (2d Cir. 1999).....................................................................16

**CONSTITUTIONS**

First Amendment .....................................................................................25-26

Fourth Amendment ..................................................................................22-24

Eleventh Amendment...............................................................................26

Fourteenth Amendment .......................................................................... passim

iv

**STATE STATUTES**

Public Health Law, Title 6
   Article 2168 ...................................................................................4, 12

NYS Public Health Law
   § 12-a(1) ...........................................................................................5
   § 206(1)(a)-(1)(l) .............................................................................5
   § 206(2) .............................................................................................5
   § 206(4)(a) .........................................................................................5
   § 230 .................................................................................................14
   § 230-a(3) .........................................................................................14
   § 2168 .......................................................................................passim
   § 2168(1) ...........................................................................................3
   § 2168(1)(a) .......................................................................................3
   § 2168(3)(a) ................................................................................3, 15
   § 2168(3)(b)(i) ..................................................................................3
   § 2168(3)(c) .......................................................................................3
   § 2168(5)(a) ................................................................................3, 15
   § 2168(5)(c) .......................................................................................3
   § 2168(8)(b)(i) ................................................................................28
   § 2168(8)(d) .....................................................................................28
   § 2168(8)(e) .....................................................................................28
   § 2168(9) .....................................................................................4, 10
   § 2168(13) ...................................................................................4, 11

NYS Administrative Procedures Act
   § 301(1) ...........................................................................................13
   §§ 301-401 .......................................................................................12

NYS Education Law
   § 6530 ...............................................................................................26

**STATE REGULATIONS**

10 NYCRR, Section 66-1.2 ..............................................................4, 12

**RULES**

FRCP 26(c) ...........................................................................................26

FRCP 26(c)(1) .......................................................................................26

**MISCELLANEOUS AUTHORITIES**

STOPVAXFRAUD@health.ny.gov ......................................................7

## PRELIMINARY STATEMENT

Defendants James V. McDonald, Joseph Giovannetti, Lawrence Burwell and Brian Cruz, each in his official capacity as an agent of the New York State Department of Health ("DOH"), respectfully submit this memorandum in opposition to the dual motions of Plaintiff Faiz Khan for a preliminary injunction and to quash the subpoena issued by DOH to Khan. Defendant McDonald is the Commissioner of DOH; Defendant Giovannetti is the Director of DOH's Bureau of Investigations, Division of Legal Affairs; and Defendants Burwell and Cruz are investigators in DOH's Bureau of Investigations. Plaintiff Khan is a New York medical doctor whose practice has included the purported administration of immunizations to both adults and children. Khan's Amended Complaint (the "FAC"), which runs 86 pages and 394 paragraphs, alleges violations of his First, Fourth, Fifth and Fourteenth Amendment rights.[1]

In sum and substance, Khan alleges that his rights were violated by Defendants' past investigative actions into his immunization practices (the "Investigation"); by Defendants' past issuance of a subpoena to him for information about those practices (the "Subpoena"); and by Defendants' past suspension of his access to the New York State Immunization Information System ("NYSIIS"). On this basis, Khan's motions seek (i) a mandatory preliminary injunction ordering Defendants to reinstate his access to NYSIIS, and (ii) a prohibitory preliminary injunction enjoining Defendants from interfering with his access to NYSIIS, from enforcing the Subpoena and from continuing the Investigation (Plaintiff's memorandum of law in support of

---

[1] In addition to Khan's 86-page FAC, Khan has served dual briefs that run at total of 57 pages as well as declarations that run a total of 52 pages. For the sake of brevity, Defendants hereby categorically deny all of the allegations in the FAC and deny the truth of the testimony offered through Plaintiff's declarations. To the extent pertinent to this case, Defendants submit their own testimony, described below. In addition, Defendants respond to both of Plaintiff's motions through this consolidated opposition. Defendants have sought to respect the Court's page limits by limiting this opposition to fewer than the 50 pages that Defendants otherwise would be permitted.

1

his motion for preliminary injunction ("P's PI Brief")); and (iii) an order quashing the Subpoena (Plaintiff's memorandum of law in support of his motion to quash the Subpoena ("P's Quash Brief")). Khan's motions should be denied in their entirety. They fail to establish the requirements for preliminary injunctive relief, including the likelihood that his claims will succeed on the merits and that the public interest weighs in favor of any injunction in these circumstances, and they fail to establish that the Subpoena should be quashed.

## **BACKGROUND**

Khan filed this action on July 8, 2024 and, on July 15, 2024, filed an Amended Complaint (ECF Nos. 1, 16). On August 7, 2024, he served his motion for preliminary injunction. With this memorandum, Defendants have served the Affirmation of Joseph Giovannetti, Esq., which describes the pertinent regulatory framework and Defendants' investigation of Khan's immunization practices ("Giovannetti Aff."); the Declaration of Lawrence Burwell, which describes his two office visits with Khan ("Burwell Dec."); and the Declaration of Vajeera Dorabawila, Ph.D., which describes the process that DOH requires before it grants a user access to the NYSIIS database ("Dorabawila Dec."). For the Court's convenience, we summarize below key provisions of New York's Public Health Law that authorize the actions taken by Defendants in connection with Khan's immunization practices.

### I.    **New York State's Immunization Information System Is Codified In New York's Public Health Law**

The New York State legislature directed the Commissioner of the Department of Health to establish NYSIIS – and granted the Commissioner broad discretion to implement and maintain NYSIIS – by legislation that is codified as NYS Public Health Law § 2168. Section 2168 requires the Commissioner "to establish a statewide automated and electronic immunization information system that will serve, and shall be administered consistent with" the public health

(NYS PHL § 2168(1)). In particular, the legislature intended for NYSIIS to "collect reports of immunizations and thus reduce the incidence of illness, disability and death due to vaccine preventable diseases" (Id. at § 2168(1)(a)).

Section 2168 requires that "[a]ny health care provider who administers any vaccine to a person less than nineteen years of age [] shall report all such immunizations [] to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations" (Id. at § 2168(3)(a), 2168(5)(a)). Providers are likewise required to report "immunizations [previously] received by a person less than nineteen years of age [] if not already reported" (Id.). In contrast to these mandates, providers are not required to report (but may report) immunizations of individuals aged nineteen and older.[2]

Section 2168 requires the prompt reporting of accurate information. "[NYSIIS] shall serve as a means for authorized users to receive prompt and accurate information, as reported to the system, about the vaccines that the registrant has received" (Id. at § 2168(3)(c)). This includes the reporting of specific data elements and any other information requested by DOH: "[t]he information provided to the system [] shall include the national immunization program data elements and other elements required by the commissioner" (Id. at § 2168(5)(a)). In addition, Section 2168 provides that "[a]ll health care providers shall provide the department [] with additional or clarifying information upon request" (Id. at § 2168(5)(c)).

The Commissioner is authorized to suspend access to the system in his sole discretion: "The commissioner [] may refuse access to the statewide immunization information system based on the authenticity of the request, credibility of the authorized user or other reasons as

---

[2] The Statute provides that "[a]ny health care provider who administers any vaccine to a person nineteen years of age or older, may report, with the consent of the vaccinee, all such immunizations to the department in a format prescribed by the commissioner within fourteen days of administration of such immunizations" (NYS PHL § 2168(3)(b)(i)).

provided for in regulation" (Id. at § 2168(9)). Further, the Commissioner is authorized to "promulgate regulations as necessary to effectuate the provisions of this section[,]" including "provision for orderly implementation and operation of the statewide immunization information system, including the method by which each category of authorized user may access the system" (Id. at § 2168(13); see also NYCRR 66-1.2(e) (requiring, among other things, that "[e]ach person seeking access to NYSIIS [] must submit a completed application for access").

Thus, DOH requires, among other things, that the applicant for NYSIIS access complete a training course and consent to the terms of and sign the "NYSIIS User Agreement" before DOH determines whether to grant the provider access (Dorabawila Dec.). No provider or other user is entitled to NYSIIS access and it is within DOH's sole discretion whether to grant such access. DOH's records reflect that Khan completed this process on March 12, 2021, at 12:32 p.m., and DOH granted him access on March 15, 2021 (Id.). By its terms, the NYSIIS User Agreement obligates users "to abide by the terms of Public Health Law, Title 6, Article 2168, and the provisions of 10 NYCRR (New York Code of Rules and Regulations), Section 66-1.2" (Exhibit "A" to Dorabawila Dec.). The User Agreement provides that "any violations of these provisions will result in termination of access privileges" (Id. at 4).

Separately, on August 20, 2013, as a condition of his access to the State's Health Provider Network, Khan signed the "New York State Department of Health, HPN Document, Medical Practice Agreement and Account Request" (the "HPN Agreement," Exhibits "B" and "C" to Dorabawila Dec.). Section VI of the HPN Agreement obligates the user to "cooperate" with DOH in any "investigations" concerning the State's databases (Id.). Section V provides that "[a]bsent an appropriate response to account violations, user account privileges will be deleted upon a first offense," and Section VIII provides that "[a]ccess to the [DOH] secure website is a

privilege that may be revoked temporarily or permanently when violations of these security policies occur" (Id.)

## II.    Defendants Are Authorized By The Public Health Law
## To Conduct Investigations And To Issue Subpoenas

The Commissioner is charged with broad responsibility for the "health and life of the people of the state," including responsibility for "the operation of public immunization programs," including "quality assurance for immunization related activities and other immunization related activities" (PHL § 206(1)(a)-(1)(l)). To carry out these responsibilities, in addition to the authority granted under the NYSIIS provisions set forth above, "the commissioner and any person authorized by him [] may, without fee or hindrance, enter, examine and survey all grounds, erections, vehicles, structures, apartments, buildings and places" (Id. at § 206(2)).

In addition, the Commissioner may "issue subpoenas, compel the attendance of witnesses and compel them to testify in any matter or proceeding before him" (Id. at § 206(4)(a)). Likewise, "[t]he commissioner, or any person designated by him [] may issue subpoenas and administer oaths in connection with any hearing or investigation under or pursuant to this chapter" (Id. at § 12-a(1)). On August 3, 2020, the Commissioner expressly authorized Director Giovannetti "to administer oaths, compel the attendance of witnesses and the production of books, papers and records and to take proof and testimony concerning all matters within the jurisdiction of the New York State Department of Health" (Giovannetti Aff.).

## III.    After Investigation Of Khan's Immunization
## Practices, Khan's Access To NYSIIS Is Suspended

As part of its ongoing effort to identify and eliminate vaccination fraud, in May 2024, DOH's Bureau of Investigations conducted a general audit of NYSIIS reporting patterns of users that enrolled in NYSIIS since June 2019 and had reported administration of standard (non-

Covid) pediatric vaccines to NYSIIS (Giovannetti Aff.). This audit included Khan's practice (Advanced Medicine of Long Island), which had first enrolled in NYSIIS in March 2021 and had reported non-Covid pediatric vaccinations. Id. DOH's review of vaccination information associated with Khan's practice, which is discussed more fully in the Giovannetti Affirmation, revealed several suspicious patterns suggesting possible violations of the PHL and, in any event, the need for DOH to further investigate Khan's vaccination practices, including the validity of the information that he was reporting to NYSIIS. Id.

Thus, on April 29, 2024, DOH Investigators Lawrence Burwell and Brian Cruz conducted a consensual interview with Dr. Khan at his medical practice. Id. During the interview, among other things, Investigators Burwell and Cruz observed long-expired vaccines (that expired as early as September 2021, and most recently, in November 2022) and other information that further raised suspicions. Id. DOH's subsequent review of vaccination data submitted by Khan to NYSIIS determined that approximately 30% of his purported non-Covid vaccinations were reported a year or more *after* the purported administration date. Id. Moreover, on at least seven occasions he had reported administering one of the expired vaccines on a date when it would have been *expired* for at least six months and up to sixteen months. In other words, Khan had reported injecting patients with expired vaccines, in apparent violation of PHL § 2168. Id. Additionally, the Bureau of Investigations found that out of approximately 215 standard pediatric (i.e., non-Covid) vaccines reported to NYSIIS by Khan since March 2021, 83 were reported to NYSIIS beyond the 14-day requirement set forth in the Public Health Law. The majority of these 83 vaccinations were reported months or years after administration. Id.

At best, all of this showed grossly inaccurate reporting by Khan of required information to NYSIIS in violation of PHL § 2168 and the NYSIIS User Agreement. Id. Based on

Defendants' findings at that point in the investigation, and in the interest of ensuring the accuracy and integrity of the data on NYSIIS, on May 31, 2024, Khan's NYSIIS account was suspended. Id. On June 11, 2024, DOH issued a subpoena to Khan seeking the production of certain records related to his vaccination practices to further the above-described investigation. Id. On June 12, 2024, DOH investigators conducted a second consensual visit to Khan's office. Id. In the course of the two meetings with Khan, the investigators discussed with Khan their concerns about his reporting of vaccine information on the NYSIIS system and personally served the Subpoena on him (Giovannetti Aff.).

Subsequently, on or about June 17, 2024, the Bureau of Investigations received unsolicited information from a credible source that Khan had reported at least fourteen (14) additional vaccinations to NYSIIS using an invalid (i.e., non-existent) lot number. Id. This information was provided by an entity separate and independent from DOH that had been investigating vaccination records provided by Khan. Id. The entity determined that there were inaccuracies and inconsistencies such that it referred the matter, along with its findings, to the Bureau of Investigations through the Bureau's STOPVAXFRAUD@health.ny.gov email address. Id.

## ARGUMENT

### THE PLAINTIFF'S MOTIONS FOR A PRELIMINARY INJUNCTION AND TO QUASH THE SUBPOENA SHOULD BE DENIED

A preliminary injunction is an "extraordinary and drastic remedy," Moore v. Consolidated Edison, 409 F.3d 506, 511 (2d Cir. 2005), that is "never awarded as of right." Winter v. NRDC, 555 U.S. 7, 24 (2008). "When, as here, a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of

success on the merits, and (3) public interest weighing in favor of granting the injunction." Friends v. Town of East Hampton, 841 F.3d 133, 143 (2d Cir. 2016).[3]

In addition, the Second Circuit has "held the movant to a heightened standard" where, as here: (i) an injunction is "mandatory" or (ii) the injunction "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." People v. Actavis, 787 F.3d 638, 650 (2d Cir. 2015); Cacchillo v. Insmed, 638 F.3d 401, 406 (2d Cir. 2011) ("a mandatory preliminary injunction [] alters the status quo by commanding some positive act, as opposed to a prohibitory injunction seeking only to maintain the status quo").

Thus, "[a] mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Cacchillo, 638 F.3d at 406. In such cases, as Khan concedes (P's PI Brief at 2-3), the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to showing that the preliminary injunction is in the public interest. Id.

I.    **The Court Should Deny Khan's Motion For An Order Reinstating His Access To NYSIIS**

Khan's motion seeks a mandatory preliminary injunction ordering Defendants to reinstate Khan's access to NYSIIS (P's PI Brief at Point I) and a prohibitory preliminary injunction ordering Defendants not to interfere with Khan's access to NYSIIS (P's PI Brief at Point II). Because Khan's access to NYSIIS is currently suspended, Khan must demonstrate that he is entitled to a mandatory preliminary injunction reinstating his access. Here, Khan contends that his suspension from NYSIIS amounts to a violation of his Fifth and Fourteenth Amendment due

---

[3] Internal quotations and citations to them are generally omitted throughout this brief.

process rights (P's PI Brief at 2-19; 19-21). Khan, however, has failed to meet the high standard for the "extraordinary and drastic remedy" that he seeks. See Moore, 409 F.3d at 511.

First, Khan has failed to demonstrate that he is likely to succeed on his due process claim. Although he appears to contend that his access to NYSIIS is a constitutionally protected "property" or "liberty" interest (P's PI Brief at 6-14), Khan cites no pertinent authority to support that argument. Khan's interpretation of various sections of the PHL – to suggest that Defendants' actions at issue here are without authority – is tortured at best. As Defendants demonstrate above and more fully below, their actions are expressly and fully authorized by the PHL. Moreover, Khan has failed to establish that he has any property or liberty interest in access to NYSIIS. Thus, Khan had no right to procedural due process in connection with his access suspension.

## A.  Khan Has No Property Interest In Access To NYSIIS

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972). "To have a property interest [], a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Id. at 577. "Property interests [] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id.

Where, upon review of those "existing rules or understandings," the plaintiff has shown no "legitimate claim of entitlement," no property interest is established. See, e.g., Roth, 408 U.S. at 578-79 (where the terms of his employment "specifically provided that [his] employment was to terminate" on date certain, non-tenured assistant professor had no property interest in

9

continued employment by university after that date). Notably, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Castle Rock v. Gonzalez, 545 U.S. 748, 756, 760-61 (2005) (despite mandatory language, factual context required that government official exercise discretion, foreclosing claim of entitlement);[4] Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991) ("If the statute, regulation, or contract in issue vests in the state significant discretion over the continued conferral of [a] benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit"); Plaza Health v. Perales, 878 F.2d 577, 581 (2d Cir. 1989) ("the existence of provisions that retain for the state significant discretionary authority over the bestowal or continuation of a government benefit suggests that the recipients of such benefits have no entitlement to them"); Maple Avenue v. Town of North Haven, 924 F.Supp.2d 392, 399 (D. Conn. 2013) (where government is authorized to make inherently discretionary judgments – not limited by any explicit mandatory standards or guidelines – plaintiff has no "legitimate claim of entitlement").

Here, Defendants were granted broad discretion to regulate access to NYSIIS – including to both grant and suspend access to it – pursuant to the Public Health Law. "The commissioner [] may refuse access to [NYSIIS] based on the authenticity of the request, credibility of the authorized user or other reasons as provided for in regulation" (NYS PHL § 2168(9)).[5]

---

[4] The Court in Castle Rock viewed as "radical" the plaintiff's contention – like Khan's contention here – that the alleged property interest "arises incidentally, not out of some new species of government benefit or service, but out of a function that government actors have always performed—to wit, arresting people who they have probable cause to believe have committed a criminal offense." Id. at 766-67.

[5] Defendants strongly disagree with Plaintiff's interpretation of PHL § 2168(9) which, together with the NYSIIS User Agreement, plainly authorize DOH to exercise its discretion to refuse NYSIIS access to individual users on the basis of credibility. Khan cites no authority for the strained interpretation he employs (P's PI Brief at 11-13), which would render the key statutory language ("refuse access") a nullity and would severely undercut DOH's ability to maintain the integrity of the data on NYSIIS by suspending those users who are believed to be entering falsified or inaccurate data onto the system.

10

Defendants' judgments based on a user's "credibility" – like credibility assessments in many legal contexts – are inherently discretionary. See, e.g., United States v. Joseph, 2024 WL 1827291, *3 (2d Cir. 2024) (assessment of credibility was within jury's discretion); Newell v. Holder, 579 Fed. Appx. 53, *54 (2d Cir. 2014) (assessment of credibility was within Attorney General's discretion); Findlay v. MTA Bus Co., 124 N.Y.S.3d 193, *193 (1st Dep't 2020) (credibility determinations were within the arbitrator's discretion); Rosenbaum v. Atlas, 887 N.Y.S.2d 93, *93 (1st Dep't 2009) (credibility assessment was within trial court's discretion); In re Decker, 760 N.Y.S.2d 908, *908 (3d Dep't 2003) ("The Board had discretion to make credibility determinations").

Indeed, Khan concedes that "*the [NYSIIS] statute[] speaks of Commissioner discretion*" (P's PI Brief at 12, ¶ 3). Further, DOH was authorized to "promulgate regulations as necessary to effectuate the provisions of this section[,]" including "for orderly implementation and operation of [NYSIIS], including the method by which each category of authorized user may access the system." PHL § 2168(13); NYCRR 66-1.2(e) (requiring that "[e]ach person seeking access to NYSIIS [] must submit a completed application for access").[6]

Importantly, neither the statutes nor the regulations suggest any limitation to Defendants' discretion in such matters. For instance, DOH is not subject to any particular standards before commencing an investigation or making a determination to refuse access, nor is it limited in the evidence that it may consider, or required to provide notice of any investigation or of any decision, nor required to articulate the basis for any such decision. In contrast to DOH's broad statutory discretion to refuse access to NYSIIS, no plausible *entitlement* to NYSIIS access can be

---

[6] Consistent with these provisions, DOH requires (among other things) that every applicant who seeks access to NYSIIS receive training and consent to the terms of and sign the "NYSIIS User Agreement" before DOH decides whether to grant access (Dorabawila Dec.).

found in the statutory scheme or in the regulations, and Khan does not identify any.[7] For instance, no medical doctor, health care practitioner or other applicant to use NYSIIS is guaranteed access to NYSIIS, or guaranteed that, if granted, access to NYSIIS will continue indefinitely, for any fixed period of time or unconditionally, or subject to any particular conditions. Moreover, nothing in PHL § 2168 (or any other provision) entitles any user to notice, to a pre-deprivation hearing or to any other process before DOH suspends an individual's access to NYSIIS, nor to any post-deprivation process.[8]

In short, the PHL reserves exclusively to Defendants the decision whether and when to suspend or terminate a user's access. By doing so, the PHL forecloses any claim that any user of the NYSIIS system has any entitlement to NYSIIS access or any property interest in it. Roth, 408 U.S. at 578-79 (after contract term with university expired, plaintiff had no entitlement to continued employment with university, which was within university's discretion); Castle Rock, 545 U.S. at 760-61 (where officers retained discretion in how to respond to complaint, plaintiff lacked entitlement to enforcement of restraining order); ISS Action v. Port Authority, 161 Fed. Appx. 120 (2d Cir. 2005) (where defendant "can unilaterally deny security access," such access is not a property interest); Kelly Kare, 930 F.2d at 176 ("nothing in [New York's Social Services Law] entitles Kelly Kare to uninterrupted participation in the [Medicaid] program"); Plaza Health, 878 F.2d at 581, 582 ("a provider does not have a property interest in continued

---

[7] To the contrary, the NYSIIS User Agreement obligates users "to abide by the terms of Public Health Law, Title 6, Article 2168, and the provisions of 10 NYCRR (New York Code of Rules and Regulations), Section 66-1.2." Further, that Agreement expressly provides that *"any violations of these provisions will result in termination of access privileges"* (Id. at 4). DOH's records reflect that Khan consented to these terms on March 12, 2021 (Dorabawila Dec.). Separately, Khan also signed the HPN Agreement, by which he also agreed that his access was subject to revocation (Id. at Exhibit "C," Sections V and VII).

[8] Khan argues that Defendants were obligated to follow the procedures set forth in NYS Administrative Procedures Act §§ 301-401, but Khan cites no authority to support that argument. Moreover, on their

participation in the [Medicaid] program"); <u>S&D v. Goldin</u>, 844 F.2d 962, 968 (2d Cir. 1988) (contractor had no entitlement to continuation of service contract where "contract did not create a property interest in non-termination in the first place"); <u>Fishermen's Finest v. United States</u>, 155 Fed. Cl. 576, 599 (2021) ("The absence of crucial indicia of a property right, coupled with the government's irrefutable retention of the right to suspend, revoke, or modify [plaintiff's] swordfishing permit, compels the conclusion that the permit bestowed a revocable license, instead of a property right"), <u>aff'd</u>, 59 F.4th 1269 (Fed. Cir. 2023); <u>Guettlein v. United States</u>, 577 F. Supp. 3d 96, 104-05 (E.D.N.Y. 2021) ("any property right to employment that plaintiffs may claim does not rise to the level of a fundamental right protected by substantive due process"); <u>Green v. Hilliard</u>, 2015 WL 8664175, *8 (D. Conn. 2015) ("In this case, there is no statute, regulation or other legal guidance on the standards [the decision-maker] should apply in determining whether to revoke, grant, or deny an individual's access to [the government database]. Without any such guidance, the decision to grant [] access is purely discretionary and, therefore, cannot create a constitutionally cognizable property interest"); <u>Maple Avenue</u>, 924 F. Supp. 2d at 399 (no property interest where Police Chief acted pursuant to policy that granted him "very substantial discretion," which was "far from the kind of restriction that creates a protected property interest"); <u>Kahn v. Inspector General</u>, 848 F. Supp. 432, 438 (S.D.N.Y. 1994) (provider "does not have a protected property interest in continued participation in the [] Medicare program").[9]

---

face, those provisions apply only to "adjudicatory proceedings" and are therefore not applicable here (NYS APA § 301(1) ("In an adjudicatory proceeding . . . .")).

[9] Khan cites a series of professional misconduct cases from the Seventh Circuit (P's PI Brief at 8), but those cases are markedly different from this case and nothing in them remotely supports Khan's argument here that he has a protected property or liberty interest in access to NYSIIS.

### B. **Khan Has No Liberty Interest In Access To NYSIIS**

Khan also has not shown that Defendants' suspension of his access to NYSIIS deprives him of a constitutionally protected liberty interest. Khan contends that Defendants' suspension of his access to NYSIIS constitutes a restriction of his medical license without due process (P's PI Brief at Point I). Alternatively, Khan argues that Defendants' suspension of his access infringes on his right to practice medicine free from government interference (Id.).

Khan's argument finds no support in the facts or the law. To be clear, Defendants have not sought to suspend or to limit Khan's license to practice medicine, have taken no disciplinary or other legal action against him, and have not threatened to take any such action. Khan does not seriously suggest otherwise. Khan's argument that his license to practice medicine has been restricted appears to be based *solely* on Defendants' determination to suspend his access to NYSIIS, which is not required to practice medicine.[10]

Thus, insofar as DOH is aware, Khan remains free to practice medicine and he continues to do so. It follows that Defendants have not deprived Khan of his interest in practicing medicine. "In a line of earlier cases, this Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation." Conn v. Gabbert, 526 U.S. 286, 291-92 (1999). Importantly, "[t]hese cases all deal with a complete prohibition of the right to engage in a calling[.]" Id. at 292; Roth,

---

[10] Khan argues that Defendants' actions imposed on him a "license restriction" without the authority of the New York Board of Professional Medical Conduct ("BPMC"), but this argument misses the point. First, Khan cites no authority that Defendants' conduct constitutes a "license restriction." Second, Defendants' actions at issue here are not in the nature of disciplinary actions, or taken on the basis of professional misconduct (which is the subject matter of PHL § 230). Third, Defendants' do not rely on those provisions for their authority, but rather on the independent provisions of the PHL described above in this memo. For these reasons, any rules or regulations that may apply to professional discipline (e.g., PHL § 230-a(3)) or to proceedings by BPMC are irrelevant here.

14

408 U.S. at 573-74 (no deprivation of liberty interest even where plaintiff was terminated from public employment where he remained "free to take advantage of other employment opportunities"); <u>Kelly Kare</u>, 930 F.2d at 177 (no deprivation of liberty interest where defendants "provided no reason for the [contract] termination" and made no public statement about it); <u>S&D</u>, 844 F.2d at 970 (no deprivation of liberty interest where contractor alleged that contract termination left it "forced out of business, tottering near bankruptcy, unable to get work"); <u>Guettlein</u>, 577 F. Supp. 3d at 104 (no deprivation of liberty interest where plaintiffs failed to plead or to show that they could not find other employment); <u>Green</u>, 2015 WL 8664175, at *9-10 (no deprivation of liberty interest where plaintiff failed to show that she was barred from pursuing any job in her chosen profession). In <u>Green</u>, the Court concluded that "[b]ecause [plaintiff] has no liberty interest in accessing [the government database], she cannot have a liberty interest in a job requiring such access." <u>Id</u>. The same is true here.[11]

Moreover, Khan has failed to plead or to make any showing that Defendants' suspension of his access to NYSIIS has had – or will have – any material effect on his medical practice. To the contrary, Khan has conceded that his practice "does not focus on vaccinations," his office "does not function as a conventional vaccination site" and Khan "does not routinely vaccinate his patients" (FAC at ¶¶ 70, 88). To the extent that Khan's medical practice includes the administration of *any* immunizations, he remains free to immunize individuals over age 19 without reporting them on NYSIIS (PHL § 2168(3)(a), 2168(5)(a)). Thus, to the extent that Khan's lack of access to NYSIIS has any effect on his medical practice, it affects only his

---

[11] Even if Khan could show that Defendants' suspension of his access to NYSIIS interfered with a protected property or liberty interest, he has not shown that the access suspension was anything other than the sort of "reasonable government regulation" to which any such right is subject. <u>Conn</u>, 526 U.S. at 291-92. Nor has he shown that it is action that is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." <u>Guettlein</u>, 577 F. Supp. 3d at 105. To the contrary, it is plainly rationally related to the State's compelling interest to protect the public health. <u>Id</u>. at 105-06.

immunizations of individuals under 19 years of age. But, notably, Khan does not allege that he is a pediatrician or that he routinely vaccinates individuals under 19 years as part of his medical practice. Rather, he alleges that he is a "dual specialist in emergency medicine and internal medicine" (FAC at ¶ 56).

In fact, Khan's pleading and testimony are entirely silent as to whether *any* individuals under 19 years of age are a part of his practice, and they are silent about the likelihood that he will be asked to immunize any of them in the future. Khan's pleading and testimony are silent as to whether he expects to lose any income from the alleged loss of his ability to immunize individuals under 19 years of age, and if so, how much. In short, Khan has failed to plead or prove that his loss of NYSIIS access has had – or will have – any material impact on his medical practice (much less deprive him of a constitutionally protected property or liberty interest). At most, any impact on Khan's practice is *de minimis*, and "the requirements of due process do not apply when the property interest involved is '*de minimis*.'" Zigmund v. Solnit, 199 F.3d 1325, *2 (2d Cir. 1999) (plaintiff stated no procedural due process claim where alleged infringement was *de minimis*); Ahlers v. Rabinowitz, 684 F.3d 53, 62-63 & n.8 (2d Cir. 2012) (same).

Thus, Khan has not shown a "clear" or "substantial" likelihood of success on his due process claim. Nor has he shown that "extreme or very serious damage will result from the denial of preliminary relief." Cacchillo, 638 F.3 at 406. Apart from his bald allegation of a constitutional violation that is unlikely to succeed, Khan has made no showing of irreparable harm absent entry of an injunction. Thus, the Court should deny Khan's request for the "extraordinary and drastic remedy" that he seeks. T.C. v. New York State, 2022 WL 17689841, *8-11 (S.D.N.Y. 2022) (denying preliminary injunction where plaintiff failed to show likelihood of success on the merits); Kelly v. New York State, 2021 WL 2333349, *1 (E.D.N.Y. 2021)

16

(denying preliminary injunction where plaintiff failed to show likelihood of success on the merits), aff'd, 2022 WL 1210665 (2d Cir. 2022).

For the additional reasons set forth in Point IV below, Khan also has failed to demonstrate that the public interest and balance of equities support his reinstatement to NYSIIS.

Accordingly, the Court should deny this branch of his motion.[12]

## II.     The Court Should Deny Khan's Motion For An Order Enjoining Defendants From Continuing The Investigation

Khan also seeks a preliminary injunction enjoining Defendants from continuing the Investigation into his vaccination and reporting practices (P's PI Brief at Point IV). Khan contends that DOH's Investigation violates his "due process" rights under Fourteenth Amendment because it constitutes "a true pattern of harassment" (Id. at 24). Khan, however, has failed to demonstrate that he is likely to succeed on this claim.[13]

As a preliminary matter, the Supreme Court has held that the due process clause is not offended when an administrative agency investigates an individual – including by use of its subpoena power to gather evidence adverse to the individual. "The Due Process Clause is not implicated under such circumstances because an administrative investigation adjudicates no legal rights[.]" S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 742 (1984). The same is true here. Although DOH has commenced an administrative investigation, DOH has not made any final

---

[12] To the extent that the Court separately entertains Khan's motion for a prohibitory injunction concerning his access to NYSIIS, Defendants submit that his motion fails for the same reasons as set forth here.

[13] Khan's failure to plead a non-conclusory factual basis showing any likelihood that Defendants will continue the Investigation – and any likelihood of imminent harm to him from any such future (hypothetical) investigative steps – demonstrates that Khan lacks standing for any injunctive relief. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983) (plaintiff lacked standing for injunction where he failed to show a likelihood that he would again be subject to the allegedly illegal practice); Guan v. Mayorkas, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021) (Chen, J.) ("When 'only past acts are involved,' declaratory relief is unavailable").

determinations, lodged any charges nor filed any complaint against Khan, much less have any of Khan's legal rights been adjudicated. Thus, Khan's due process rights have not been infringed. Should DOH continue its investigation to a point at which Khan's rights are actually adjudicated or otherwise infringed, Khan and his counsel can assert any objections at that time.

Khan cites two cases in support of his claim that Defendants' conduct amounts to "a true pattern of harassment" in violation of the due process clause, but neither supports his claim here. First, in Chalfy v. Turoff, 804 F.2d 20, 23 (2d Cir. 1986), the Second Circuit *denied* the preliminary injunction and affirmed dismissal of the action (and awarded monetary damages for the plaintiffs' frivolous appeal). "Although a true pattern of harassment by government officials," where that harassment is "systematic and intentional," "may make out a section 1983 claim for violation of due process of law," plaintiffs' claims for harassment in that case were dismissed. Id. at 22-23. Defendant's "actions were not illegal and they placed no discriminatory burden on a constitutionally protected activity." Id. The Court observed that, "at most," defendant NYC Taxi & Limousine Commission was "a bit overzealous in stopping and ticketing appellants' admittedly unlicensed limousines and in requiring strict adherence to its hearing procedures." Id. On those facts, there was "no evidence of the kind of systematic and intentional harassment that would give rise to a claim[.]" Id.

In Bertuglia v. City of New York, 839 F. Supp. 2d 703, 719 (S.D.N.Y. 2012), the Court neither granted nor considered any motion for preliminary injunction. Rather, that matter was before the Court on defendants' motions to dismiss for failure to state a claim. Id. at 712. The Court observed that "[w]hile a plaintiff [] may state a due process claim for a systematic pattern of harassment by government officials that is designed to destroy the plaintiff's business, these claims are difficult to maintain." Id. Indeed, the facts of that case were far different from the

facts of this case. That case arose "out of the initiation, investigation and *prosecution of criminal charges* brought against plaintiff [Bertuglia], *and his companies* [collectively "Laro"], and *the subsequent demise of Laro*." Id. at 712 (emphasis added). In that context, the Court granted the motion of certain defendants to dismiss the claim while allowing the claims to proceed against certain other defendants. Id. at 719.[14] No injunction was granted.

Here, Khan has entirely failed to meet the requirements to show a pattern of harassment, much less one that arises to a due process violation. At its core, this case involves two brief office visits by DOH personnel at which they spoke with Khan *with his consent*. (Giovannetti Aff.; Burwell Dec.). Khan, who was accommodating by his own account, expressed no objection during either visit (Id.). He did not ask Burwell or Cruz to leave his office, did not stop the interview and never mentioned that he had an attorney (Id.). Upon the conclusion of the second visit, Burwell and Cruz left him with a demand for records (that they have not followed up on or sought to enforce). Despite his lengthy pleading – which is overwhelmingly conclusory and unsupported – Khan does not allege any other material facts about Defendants' conduct.

In particular, Khan has not pled and has not shown that Defendants acted with any purpose to destroy Khan's business. Khan has failed to show that Defendants' conduct was illegal or that it placed any "discriminatory burden" on a constitutionally protected activity. The conduct of Defendants here does not come close to the alleged conduct of defendants in Bertuglia. Thus, neither Chalfy nor Bertuglia support Khan's motion. Nor has Khan acknowledged his written consent to "cooperate" with DOH in connection with any

---

[14] Among other things, plaintiffs alleged "an intentional effort" to harass "Bertuglia and his family," "to drive away his clients and 'ruin' his business," all for the purpose of satisfying "personal or vindictive goals." Id. at 719. Plaintiffs alleged that at least one defendant "personally lied to prosecutors in an intentional effort to initiate a baseless criminal case against the plaintiffs, and that [one defendant] personally visited Laro's clients to spread negative information about the allegedly baseless criminal charges against Laro, in order (successfully) to drive Laro out of business." Id.

"investigations" concerning the State's databases (Background Section above). In short, Khan has fallen far short of showing that Defendants' conduct amounts to a due process violation.

Moreover, although Khan now claims – in wholly conclusory terms – to have felt "coerced," he describes no conduct by either investigator that could be considered objectively coercive.[15] There is nothing inherently coercive about visiting a place of business during business hours and engaging the owner in a consensual conversation, and Khan cites no caselaw to the contrary. That's especially true here where, as Khan emphasizes in his declaration, the subject of the interview (Khan) is a highly educated medical doctor and experienced clinic owner with years of experience in professional leadership roles (Khan Dec. at ¶¶ 3-11) that involved "interfac[ing] with various regulatory agencies" (Id. at ¶ 31). Indeed, Khan's declaration belies any notion that his cooperation during either of these two visits was the product of coercion or any other government compulsion. Instead, by his own admission, Khan intentionally chose to cooperate with the investigation, believing that cooperation was the best way to "put [the investigation] to rest" and to have "the investigators go away" (Id. at ¶¶ 31, 76).

Thus, far from governmental coercion, Khan's compliance and cooperation were the result of an strategic decision that he made, believing based on his own experience that it was in his best interest to cooperate. Khan's description of Investigator Burwell as "either a junior investigator or an investigator in training" further undermines his suggestion that he was "coerced" or that his subjective feeling of coercion was objectively reasonable (Id. at ¶ 36). It strains credulity to believe that a medical practitioner and clinic owner with the length and wealth of experience that Khan proudly highlights in his declaration would feel coerced by frank and direct questions by an investigator whom he perceived as inexperienced and unassuming.

---

[15] See Khan Declaration ("Khan Dec.") at ¶¶ 30, 32, 57, 76.

In short, Khan has not shown a "clear" or "substantial" likelihood of success on his due process (harassment) claim. Nor has he shown that "extreme or very serious damage will result from the denial of preliminary relief." <u>Cacchillo</u>, 638 F.3 at 406. Indeed, apart from his bald allegation of a constitutional violation that is unlikely to succeed, Khan has made no showing of irreparable harm absent entry of an injunction. For all of these reasons, the Court should deny Khan's request for the "extraordinary and drastic remedy" that he seeks. <u>T.C.</u>, 2022 WL 17689841, at *8-11 (denying preliminary injunction where plaintiff failed to show likelihood of success on the merits); <u>Kelly</u>, 2021 WL 2333349, at *1 (denying preliminary injunction where plaintiff failed to show likelihood of success on the merits); <u>Cameron v. Zucker</u>, 2017 WL 2462692, at *7 (S.D.N.Y. 2017) (Koeltl, J.) (denying preliminary injunction to enjoin disciplinary proceedings against medical doctor).

For the additional reasons set forth in Point IV below, Khan also has failed to demonstrate that the public interest and balance of equities support an order to enjoin Defendants' Investigation in the circumstances of this case.

Accordingly, the Court should deny this branch of his motion.

### III.    The Court Should Deny Khan's Motion For An Order Enjoining Defendants From Enforcing The Subpoena And Quashing The Subpoena

Khan seeks a preliminary injunction enjoining Defendants from enforcing the Subpoena and separately asks the Court to quash the Subpoena (P's PI Brief at Point III; P's Quash Brief). Khan contends that the Subpoena violates his First, Fourth and Fourteenth Amendment rights. As a factual matter, Defendants have not followed up on or sought to enforce the Subpoena. In the event that they do seek to enforce the Subpoena in the future, Khan and his counsel may assert any objections at that time. As with any other subpoena, Khan is free to object and to seek

to negotiate the scope of the Subpoena with Defendants' counsel before compliance, which he has not attempted to do to date.[16]

In any event, Khan has failed to demonstrate that he is likely to succeed on any of these claims. For the Court's convenience, a complete and accurate copy of the Subpoena about which Khan complains is attached to the Affirmation of Joseph Giovannetti. The Subpoena consists of a total of *six* requests for documents from Khan's medical practice. All clearly, specifically and narrowly request documents related to Khan's vaccination practices. One of the requests (#5) seeks information about possible witnesses to Khan's vaccination practices and record-keeping, namely contact information of his employees or former employees. Defendants submit that this Subpoena is entirely reasonable. To the extent that Khan claims that certain of the documents that have been requested do not exist, he may communicate that in response to the request. To the extent that Khan is unclear about what information is sought, he is free to inquire of undersigned counsel, as the plain language of the subpoena invites.[17]

To support his claim of an alleged Fourth Amendment violation, Khan relies principally on the case of See v. Seattle, 387 U.S. 541 (1967), but Khan's reliance is misplaced. In See, the Court held that the owner of a *locked warehouse* who *refused entry* to a fire inspector who *lacked a warrant* was wrongfully *arrested and convicted* in violation of his Fourth Amendment

---

[16] Khan's failure to plead a non-conclusory factual basis suggesting any likelihood of future conduct by Defendants to enforce the Subpoena – and any likelihood of imminent harm to him from any such future conduct – demonstrates that Khan lacks standing for any injunctive relief. Lyons, 461 U.S. at 111 (plaintiff lacked standing for injunction where he failed to show a likelihood that he would again be subject to the allegedly illegal practice); Guan, 530 F. Supp. 3d at 255 ("When 'only past acts are involved,' declaratory relief is unavailable").

[17] DOH is authorized to collect the medical records of individual patients and Khan is permitted to disclose them to DOH pursuant to federal regulations. "A covered entity may disclose protected health information to a health oversight agency for oversight activities authorized by law, including audits; civil, administrative, or criminal investigations; inspections; licensure or disciplinary actions; civil, administrative, or criminal proceedings or actions[.]" 45 C.F.R. § 164.512(d).

rights. Id. No administrative subpoena was at issue. In *dicta*, the Court provided some general guidelines to assess the reasonableness of administrative subpoenas in the future. Among them, the Court suggested that "while the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." Id. at 544-45.

In this markedly different case, Director Giovannetti signed the Subpoena for the agency, consistent with the Commissioner's prior delegation of authority to him, and with his authority under the PHL (set forth in the Background Section above).[18] The Subpoena was served on Khan by Director Giovannetti's subordinates. By its own terms, the Subpoena provided Khan several weeks to respond, and Defendants subsequently granted Khan additional time to respond through counsel. Defendants have not sought to "enforce[]" the Subpoena – in the field or otherwise – nor even followed up on it. *If* Defendants choose to do so in the future, Khan may assert his objections at that time. Thus, Khan has suffered no "penalties for refusing to comply" with the Subpoena. In sum, Defendants' practices here are entirely consistent with See. See also Los Angeles v. Patel, 576 U.S. 409, 421-22 (2015) ("These [administrative] subpoenas, which are typically a simple form, can be issued by the individual seeking the record—here, officers in the field—without probable cause that a regulation is being infringed"), citing See.[19]

---

[18] Nothing in the New York Supreme Court decision of Patel v. Bassett, Index No. 154347/2022, is to the contrary. In that case, the Court recited that "counsel to the agency" issued the subpoena without authority. In this case, the Subpoena was issued by Director Giovannetti, to whom the Commissioner had previously delegated authority to issue subpoenas.

[19] To the extent that Khan also complains that Defendants conducted an "unauthorized entry" of Khan's medical practice (P's Quash Brief at 9), that contention is not supported by the evidence. Director Giovannetti and Investigator Burwell have testified that, on both occasions when Investigators Burwell and Cruz visited Khan's medical office, they entered and spoke with Khan with his consent (Giovannetti Aff.; Burwell Dec.). For his part, Khan essentially has conceded that point when he pleads that he sought

The Supreme Court and the Second Circuit have held that, "as long as subpoenaed information was 'reasonably relevant to the agency investigation,' 'not too indefinite' and 'within the authority of the agency,' the Fourth Amendment was not offended." In re Gimbel, 77 F.3d 593, 596 (2d Cir. 1996) (denying motion to quash). Here, as we have established above, all of the Subpoena requests relate to Khan's vaccination and reporting practices, and therefore are reasonably relevant to the agency's investigation; they are clearly and concisely drafted and leave no room for confusion; and they are plainly within the authority of the agency insofar as they seek information directly related to Khan's vaccination and reporting practices.

"The initial determination of what information is reasonably relevant is left to the investigating agency." Id. at 601. "The district court must enforce the subpoena unless the agency's determination of relevancy is "obviously wrong.'" Id. DOH's determination here that the categories of information sought in the Subpoena are relevant to its investigation of Khan's vaccination and reporting practices is not "obviously wrong." Id.; see also Frid v. McDonald, 222 A.D.3d 520 (1st Dep't 2023) (affirming denial of preliminary injunction and motion to quash subpoena served on medical doctor as against Fourth and Fourteenth Amendment challenges); Horowitz v. Zucker, 172 A.D.3d 538 (1st Dep't 2019) (affirming denial of preliminary injunction and motion to quash subpoena served on medical doctor as against Fourth Amendment challenges).[20]

Khan also contends that the Subpoena infringes his Fourteenth Amendment "constitutional right to practice his profession" (P's PI Brief at 23, ¶ 4; P's Quash Brief at Point

---

to "accommodate" Burwell and Cruz on both occasions (FAC at ¶¶ 81, 82). Thus, Khan has not clearly shown that Defendants entered his premises without his consent.

[20] To the extent that the Court has any concerns with any particular request, the Court may modify that request or direct the parties to meet and confer on the matter, rather than enjoining or quashing the Subpoena in its entirety.

V), but Khan has failed to show that Defendants' service on him of the Subpoena deprives him of any constitutionally protected liberty interest or other right to practice his profession. The contours of that right are discussed in more detail above (Point I) and are incorporated here by reference. As discussed above, insofar as DOH is aware, Khan remains free to practice medicine and he continues to do so. He has not seriously argued otherwise.

It follows that Defendants have not deprived Khan of his interest in practicing medicine. See Conn, 526 U.S. at 291-92 ("These cases all deal with a complete prohibition of the right to engage in a calling"). Nothing in the cases cited by Khan (P's PI Brief at 23; P's Quash Brief at Point V) suggest otherwise. In short, Khan has failed to plead in non-conclusory terms, to make any showing or to explain how Defendants' service on him of a demand for records has had – or will have – any material effect on any right to practice medicine. Nor has Khan shown that Defendants' service on him of the Subpoena supports his claim that he was subject "a pattern of harassment" in violation of his Fourteenth Amendment rights. Based upon the additional points and authorities recited above in this Brief (Point II), Defendants submit that Khan has failed to make the necessary showing that his Fourteenth Amendment rights were violated here.

Khan also contends that the Subpoena infringes his First Amendment rights. Khan appears to rely principally on Conant v. Walters, 309 F.3d 629 (9th Cir. 2002), but that reliance is misplaced. In Conant, the Court found that enforcement of a federal government policy that *threatened to punish* physicians for *communicating* with their patients *about the medical use of marijuana* offended the First Amendment.[21] Thus, the Court found the government's action to

---

[21] The policy "declared that a doctor's 'action of recommending or prescribing Schedule I controlled substances is not consistent with the 'public interest' (as that phrase is used in the federal Controlled Substances Act)' and that such action would lead to revocation of the physician's registration to prescribe controlled substances." Id. at 632.

offend the First Amendment "where the basis for the government's action is solely the physician's professional 'recommendation' of the use of medical marijuana." Id. at 631.

This case presents no similar set of facts. The Subpoena clearly does not threaten any punishment of any kind (much less license revocation) for any recommendation provided by Khan or for any other communication between Khan and his patients. Nor does the Subpoena seek to regulate or to impose any restriction on the speech of Khan or of his patients. The Subpoena merely seeks documents for purposes of an investigation into Khan's vaccination and reporting practices under the PHL, which does not infringe the First Amendment.

Thus, Khan has not shown a "clear" or "substantial" likelihood of success on his First, Fourth or Fourteenth Amendment claims. Nor has he shown that "extreme or very serious damage will result from the denial of preliminary relief." Cacchillo, 638 F.3 at 406. Apart from his allegations of a constitutional violation on which he is unlikely to succeed, Khan has made no showing of irreparable harm from service on him of the Subpoena.

As the Court is well aware, counsel routinely avoid harm to their clients' interests from allegedly improper subpoena requests by simply picking up the phone and seeking an adjustment of the offending requests by agreement. That is the mandatory "meet and confer" procedure that is set forth in FRCP 26(c) and is known to every litigator.[22] Apart from seeking withdrawal of the Subpoena in its entirety, Khan has not attempted that approach here, which could have avoided putting the Court and Defendants to this extremely burdensome motion practice.

For all of these reasons, the Court should deny Khan's request for the "extraordinary and drastic remedy" that he seeks. T.C., 2022 WL 17689841, at *8-11 (denying preliminary

---

[22] The rule provides that a "party or any person from whom discovery is sought may move for a protective order[.] *The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action*." FRCP 26(c)(1)(emphasis added). While the context differs, common sense dictates the same approach here.

injunction where plaintiff failed to show likelihood of success on the merits); <u>Kelly</u>, 2021 WL 2333349, *1 (denying preliminary injunction).

For the additional reasons set forth in Point IV below, Khan also has failed to demonstrate that the public interest and balance of equities support an order to enjoin enforcement of Defendants' Subpoena in the circumstances of this case.

Accordingly, the Court should deny this branch of Khan's motion for a preliminary injunction and should deny his motion to quash.[23]

### IV.    The Public Interest And Balance Of Equities Weigh Heavily Against Granting A Preliminary Injunction In Favor Of Khan

In addition to showing a clear likelihood of success on the merits and irreparable harm absent entry of a preliminary injunction, "[w]hen, as here, a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate [] public interest weighing in favor of granting the injunction." <u>Friends</u>, 841 F. 3d at 143. This, Khan has not done.

The Supreme Court has explained that courts should "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 312 (1982). In this case, there is a compelling public interest in maintaining the accuracy and integrity of the data on the NYSIIS system – on which countless users of the NYSIIS system rely. The integrity of that data directly supports the public's interest in protecting the life and health of millions of individuals in the State of New York.

---

[23] To the extent that Khan seeks relief based upon an alleged violation of state law, that relief is foreclosed by the Eleventh Amendment. <u>Pennhurst v. Halderman</u>, 465 U.S. 89, 106 (1984). In addition, to the extent that Khan seeks an order enjoining Defendants from taking action pursuant to NYS Education Law § 6530 (P's PI Brief at ¶ 22), that relief is foreclosed both by the Eleventh Amendment and by the standing doctrine (because Khan has pled no likelihood of future conduct by Defendants to take such action and has pled no likelihood that he would be harmed by such conduct). In fact, Defendants granted Khan his request for additional time to respond to the Subpoena even before his motions were served.

The critical importance of accurate reporting of immunization information onto the NYSIIS database by health care providers is evidenced by the broad range of authorized users of that system and by the important purposes for which those users may access that data, all as set forth in the statute itself. For example, the statute provides: "The commissioner may use the statewide immunization information system [] for purposes of outreach, quality improvement and accountability, research, epidemiological studies and disease control[.]" (NYS PHL § 2168(8)(b)(i)).

In addition, NYS PHL § 2168(8)(d) provides that the following authorized users shall have access to NYSIIS: (i) "schools for verifying immunization status for eligibility for admission;" (ii) "colleges for verifying immunization status for eligibility for admission;" (iii) "professional and technical schools for verifying immunization status for eligibility for admission;" (iv) "children's overnight camps and summer day camps for verifying immunization status of children attending camp;" (v) "third party payer[s] for performing quality assurance, accountability and outreach, relating to enrollees covered by the third party payer;" (vi) "commissioners of local social services districts with regard to a child in his/her legal custody;" (vii) "the commissioner of the office of children and family services with regard to children in their legal custody, and for quality assurance and accountability of commissioners of local social services districts, care and treatment of children in the custody of commissioners of local social services districts;" and (viii) "WIC programs for the purposes of verifying immunization [] for those seeking or receiving services" (NYS PHL § 2168(8)(d)).

In addition, "Institutes of higher education, medical research centers or other institutions engaged in epidemiological research or other public health research shall have access to de-

28

identified registrant information in the statewide immunization information system [] for research purposes if approved by the commissioner" (NYS PHL § 2168(8)(e)).

All of these users of NYSIIS's data rely on its accuracy. The entry of false, fraudulent or inaccurate information onto the NYSIIS system – for whatever reason – directly undermines these compelling public interests. Such activity undermines confidence in the NYSIIS database by its countless users and undercuts the effectiveness of NYSIIS in preventing the spread of vaccine-preventable diseases, which is the core purpose of the program.

Apart from compromising the integrity of the data on the system, there is a more direct harm to a smaller group of individuals in the community. To the extent that Khan or other providers fail to immunize *their patients* who are required to be immunized, that conduct constitutes a direct threat to the life and health of those patients. Beyond them, such conduct by a health care provider constitutes a wider (albeit less direct) threat to the life and health of other individuals in the community with whom such un-vaccinated individuals come into contact.

For instance, if children are not properly immunized (but the provider falsely reports on the NYSIIS system that they have been), those children may be permitted into schools and camps where they present an unknown and unexpected threat to countless others with whom they come into contact – fellow students, teachers, counselors, and family members. Such conduct presents a particular risk to the young, elderly, infirm (i.e., immunocompromised) or other individuals who may be medically vulnerable.

Defendants' efforts to assure compliance with the PHL and with NYSIIS support these compelling public health interests. Defendants' efforts to investigate the compliance of authorized NYSIIS users, including by demanding documents in the form of subpoenas, and to

29

take prompt action to protect the accuracy and the integrity of the NYSIIS database, are critical to maintaining the integrity of that database and public confidence in it.

Finally, as we have demonstrated above, Khan has no more than a *de minimis* private interest in having his access reinstated – an interest that is not protected by any constitutional right, that Khan has not shown to be material to his medical practice or even to his income, and that he has pled in only the most conclusory terms. He has shown even *less* of a legitimate interest in enjoining any future investigative steps that DOH may take to safeguard NYSIIS or in enjoining the entirely reasonable Subpoena that DOH has served on him.

For all of these reasons, Khan's limited interest here is heavily outweighed by the public interest in enforcement of these public health measures. Indeed, many courts that have reviewed similar cases involving vaccine rules and other public health measures have denied injunctions on similar grounds. Guettlein, 577 F. Supp. 3d at 106 (denying preliminary injunction to enjoin vaccine mandate, finding that "there is a significant public interest in safeguarding the health and safety of the Plebes and Midshipmen at the Academy"); Garland v. New York City Fire Department, 574 F. Supp. 3d 120, 133-34 (E.D.N.Y. 2021) (denying preliminary injunction to enjoin vaccine mandate, finding that "there is a significant, if not compelling, governmental interest in preventing the transmission of the Coronavirus and variants to members of the public with whom FDNY employees come into contact"); Maniscalco v. New York City DOE, 563 F. Supp. 3d 33, 39-40 (E.D.N.Y. 2021) (denying preliminary injunction to enjoin vaccine mandate, finding that "even if plaintiffs disagree with it, the Order at issue represents a rational policy decision surrounding how best to protect children"), aff'd, 2021 WL 4814767 (2d Cir. 2021); see also T.C., 2022 WL 17689841, at *7-8 (denying preliminary injunction, finding that individuals other than plaintiffs would be harmed by injunction); Cameron, 2017 WL 2462692 (denying

preliminary injunction to enjoin disciplinary investigation and related proceedings against medical doctor, finding that the State "has a clear interest in protecting the health of the citizens of New York by regulating the practice of medicine").

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Khan's motion for a preliminary injunction and his motion to quash the Subpoena.

Dated:  New York, New York
        September 23, 2024

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants

By: _____

James Mirro
Assistant Attorney General
Litigation Bureau
New York State Office of the Attorney General
28 Liberty Street – 17th Floor
New York, New York 10005
james.mirro@ag.ny.gov

1