**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

FAIZ KHAN M.D.,

                Plaintiff,               **<u>REPORT & RECOMMENDATION</u>**

     v.                            **24-cv-4745 (JMA) (ST)**

JAMES MCDONALD, MD, in his official
capacity as Commissioner of NYS Department
of Health; JOSEPH A. GIOVANNETTI, in his
official capacity as Director of Bureau of
Investigations, NYS Department of Health;
LAWRENCE BURWELL, in his
official capacity investigator, New York
State Department of Health; BRIAN CRUZ,
in his official his capacity as investigator,
New York State Department of Health;
"JOHN DOE" and/or "MARY ROE,"
the last two names being fictitious whose
identity is unknown to the Plaintiff, the
individual(s) intended being the director
or head officer of the NYS Department
of Health Immunizations Bureau,

                Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

Dr. Faiz Khan ("Plaintiff"), seeking declaratory and injunctive relief, sued various New York State Department of Health ("DOH") officials for alleged violations of Plaintiff's constitutional rights. *See generally* Am. Compl., ECF No. 16. Plaintiff's claims arise from the DOH's investigation into Plaintiff's vaccination practices. *See generally id.*

Before this Court is Plaintiff's Motion for a Preliminary Injunction and Plaintiff's Motion to Quash a subpoena. *See* Mot. Prelim. Inj., ECF No. 40; Mot. Quash, ECF No. 41. Also before this Court is a Motion to Dismiss by Dr. James McDonald, Joseph Giovannetti, Lawrence Burwell,

and Brian Cruz (collectively, "Defendants").[1]  *See* Mot. Dismiss, ECF No. 53.  Finally, before this Court is Plaintiff's request to submit a supplemental "certification" and memorandum of law, as well as his request for a pre-motion conference to discuss the filing of a possible second amended complaint.  *See* Pl.'s Letter, ECF No. 55.

For the reasons discussed below, this Court respectfully recommends that the District Court GRANT the Motion to Dismiss and DENY as moot the Motion for a Preliminary Injunction and Motion to Quash.  This Court further recommends DENYING Plaintiff's request to make supplemental submissions, as well as his request for a pre-motion conference.

## BACKGROUND

### I.    THE AMENDED COMPLAINT'S FACTUAL ALLEGATIONS

This Court will not recite every allegation in the Amended Complaint, as many of the allegations are mere legal conclusions[2] or otherwise irrelevant to the central dispute.  To summarize, Plaintiff is a New York-licensed physician who has held several roles at various institutions throughout his medical career.  Am. Compl. ¶¶ 1, 57–60; *see id.* Ex. C, ECF No 16-3.  Most pertinent here is that Plaintiff maintains a practice called Advanced Medicine of Long Island, located at 180 Michael Drive, Syosset, New York 11791 ("Advanced Medicine").  *Id.* ¶ 1.  Plaintiff opened Advanced Medicine in 2019 "with the goal of offering a blend of complementary and conventional medicine treatments to his patients."  *Id.* ¶ 62.  The practice does not accept insurance. *Id.* ¶ 70.

---

[1] As far as this Court can tell, Plaintiff has not determined the identity of defendant John Doe / Mary Roe, and no one has appeared on that defendant's behalf.  However, as Plaintiff lacks standing to sue (as this Court finds herein), this case should be dismissed as to *all* defendants, and not just the moving defendants.

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.").

As Plaintiff's practice "does not focus on vaccinations" or "function as a conventional vaccination site," Plaintiff "does not routinely vaccinate his patients." *Id.* ¶¶ 70, 88.  Even so, Plaintiff has, indeed, administered vaccines at Advanced Medicine, and maintains a vaccine storage area there. *See id.* ¶¶ 109, 112, 123, 124, 144.  However, because Advanced Medicine "is not a routine vaccination practice," and patients have "to cover the cost of vaccine procurement," Advanced Medicine "does not have surplus back-up [vaccine] stock like primary care practices." *Id.* ¶ 109.

Prior to the events in question, Plaintiff allegedly had access to the New York State Immunization Information System ("NYSIIS"). *See generally id.*  "NYSIIS is a centralized database system that keeps track of all immunization in New York." *Id.* ¶ 135.  According to Plaintiff, "healthcare providers who administer immunizations in New York have to register and enter all of the information provided both by statute and . . . regulation." *Id.* ¶ 136.  Plaintiff explains that, in particular, vaccine providers must enter information regarding vaccinations of anyone under 19 years of age. *See id.* ¶ 137.

On or about April 23 or 24, 2024, Defendant Cruz, a DOH investigator, allegedly called Plaintiff, but "refused to disclose the purpose of his call and asked for an in person meeting with [Plaintiff] to discuss the reason for his call." *Id.* ¶¶ 77, 78.  Plaintiff said that he would be at work on April 29, and asked Defendant Cruz to call him back to schedule a time to meet, as Plaintiff was "plan[ning] on having his attorney present during the scheduled appointment." *Id.* ¶ 79.  However, Defendant Cruz never called back, and on April 29, 2024, Defendant Cruz and Defendant Burwell, also a DOH investigator, went to Advanced Medicine, without a warrant, and asked to speak with Plaintiff. *Id.* ¶¶ 80, 81.  Plaintiff "did his best to accommodate them" but was "feeling coerced." *Id.* ¶ 81.

3

Plaintiff claims that Defendant Cruz and Defendant Burwell "started their interrogation . . . by generally asking [Plaintiff] about the nature of his medical practice and the types of medical cases and patients that [he] sees." *Id.* ¶ 87. Defendant Cruz and Defendant Burwell then "abruptly steered the interrogation into Plaintiff's vaccination practices" and eventually "turned the focus of their questioning by inquiring as to why patients would come to [Plaintiff] for consultation regarding vaccines and administration of such, if they could vaccinate with their primary care physician or at mass vaccination sites in the case of COVID 19 vaccines." *Id.* ¶¶ 88, 91. Defendant Cruz and Defendant Burwell also asked about "the costs associated with [Plaintiff's] consultation and vaccination or lack thereof." *Id.* ¶ 114. Throughout the questioning, Plaintiff allegedly felt that he had been "profiled and targeted for interrogation due to the atypical and completely private nature of [his] practice" and its "complementary and integrative nature." *Id.* ¶ 113.

Defendant Cruz and Defendant Burwell also allegedly asked Plaintiff if he knew Dr. Jim Campasano. *Id.* ¶ 115. Plaintiff replied that he did, as they were colleagues and friends. *Id.* ¶ 116. According to Plaintiff, Dr. Campasano "allegedly got hold of Covid cards and was accused of giving them to relatives/friends." *Id.* ¶ 117.

Plaintiff further alleges that Defendant Cruz and Defendant Burwell asked Plaintiff if he knew an individual named Jeanette Breen. *Id.* ¶ 118. Plaintiff claimed that he did not know her, but learned from the investigators that she was a midwife on Long Island found in violation of vaccine policy "by giving homeopathic drops to pediatric patients and entering such as valid childhood vaccinations into NYSI[I]S." *Id.* ¶ 119. Defendant Cruz and Defendant Burwell allegedly asked whether any of Breen's patients "came through [Plaintiff's] office," to which Plaintiff responded, "I don't know – have they?" *Id.* ¶¶ 121, 122. The investigators allegedly "remained silent." *Id.* ¶ 122.

4

Defendant Cruz and Defendant Burwell then allegedly "asked to walk through [Plaintiff's] office and demanded that [he] show to them" where he kept vaccines. *Id.* ¶ 123. Plaintiff claims that he was "[f]eeling coerced" and thus "complied." *Id.* According to Plaintiff, the vaccines were all kept in storage, with the expired vials separated from the "current ones," which Defendant Cruz said was "a good thing." *Id.* Defendant Cruz and Defendant Burwell then took photos of the vaccine storage area and left. *Id.* ¶ 124.

Thereafter, in mid-May 2024, Plaintiff allegedly received a call from a mother whose child was vaccinated before April 29, 2024. *Id.* ¶ 145. According to Plaintiff, he had previously entered the patient's vaccination information into NYSIIS. *Id.* ¶ 146. The mother informed Plaintiff, however, that her general practitioner was trying to enter the same information into their system, but that the system was "rejecting" the information that Plaintiff previously entered. *Id.*

At the beginning of June 2024, Plaintiff allegedly vaccinated two children for meningitis. *Id.* ¶ 150. However, when Plaintiff tried to enter the vaccination information into NYSIIS, he was unable to access the database. *Id.* On or about June 3, 2024, Plaintiff contacted the NYSIIS help-desk, and the representative told Plaintiff that they would forward his inquiry to the DOH. *Id.* ¶ 152. About a day later, Plaintiff left a message with the DOH Bureau of Immunizations but received no response. *Id.* Plaintiff became concerned, as some of the patients he had previously vaccinated "were returning for their follow-up consultations and injections – and Plaintiff had already ordered the vaccines for their pending visits." *Id.* ¶ 153. Plaintiff also allegedly had to "cancel a consultation for TDaP vaccination" and asked the patients to reschedule. *Id.* ¶ 154.

On June 7, seeking an explanation for the shutdown of his NYSIIS access, Plaintiff emailed Defendant Burwell. *Id.* ¶ 155; *see id.* Ex. B, ECF No. 16-2. On June 11, Plaintiff called Defendant

Burwell to inquire further. *Id.* ¶ 157. Defendant Burwell responded that he would investigate the situation and get back to Plaintiff. *Id.* ¶ 158.

On June 12, 2024, Defendant Burwell and Defendant Cruz returned to Advanced Medicine. *Id.* ¶ 160. Plaintiff did his best to accommodate Defendant Burwell and Defendant Cruz, but claims that they "were clearly harassing and interfering Plaintiff's ability to see his patients." *Id.* ¶ 161. During the visit, Defendant Burwell allegedly "pressed a button on his phone screen," leading Plaintiff to suspect that Defendant Burwell was recording the meeting. *Id.* ¶ 165. Defendant Burwell and Defendant Cruz allegedly "proceeded to cite certain lapses/errors in Dr. Khan's NYSIIS documentation . . . and . . . asked [Plaintiff] to respond to the accusations." *Id.* ¶ 163. Plaintiff was unable to answer their questions, as Defendant Cruz and Defendant Burwell gave Plaintiff insufficient information to answer them. *Id.* According to Plaintiff, however, Defendant Burwell and Defendant Cruz were "bragging" that they had shut down Plaintiff's NYSIIS access. *Id.* ¶ 164.

Defendant Burwell also allegedly asked Plaintiff if he knew that he had entered information regarding vaccines with expired lot numbers into NYSIIS. *Id.* ¶ 167. Without additional context, however, Plaintiff could not recall doing so. *Id.* ¶ 168. Defendant Burwell then allegedly "began outright accusing [Plaintiff] of some unspecified, unidentified and unknown vaccines which had expired lot numbers and were entered by [Plaintiff] into the NYSIIS database." *Id.* ¶ 169. Defendant Burwell also allegedly "accused [Plaintiff] of accepting consultations from patients" in California, Arizona and Pennsylvania. *Id.* ¶ 172. Defendant Burwell "further accused" Plaintiff "of having logged in an entry for a vaccination date which was 1.5 [years] prior to the entry." *Id.* ¶ 176.

Thereafter, Plaintiff informed Defendant Burwell and Defendant Cruz of a vaccine order due to arrive at his practice. *Id.* ¶ 177. Defendant Cruz allegedly denied any implication that Plaintiff would be unable to vaccinate patients, despite his NYSIIS lockout. *See id.*

As they were leaving, Defendant Cruz and Defendant Burwell allegedly "revealed that the NYSIIS lockout was because of what they disclosed to [Plaintiff] in the above nonspecific and non-descript terms that their findings were." *Id.* ¶ 188. Defendant Cruz and Defendant Burwell then served Plaintiff with a subpoena, dated June 11, 2024 (the "Subpoena"), which was signed by Defendant Giovannetti, the DOH's investigation bureau director. *Id.* ¶¶ 188, 189.

Plaintiff claims that Defendant Giovannetti engaged in a "pattern of harassment" against Plaintiff. *Id.* ¶ 192. In support of this allegation, the Amended Complaint cites the following email from Defendant Giovannetti, sent on July 10, 2024, in response to an email from Plaintiff's counsel:

> Counsel,
>
> You misspelled my email address below. Presumably the error is why you were unsuccessful in reaching me prior. Please see the subpoena that was served on your client, and which you attached to your filing, for the correct spelling.
>
> Please instruct your client to preserve all material in his possession relevant to our subpoena and his vaccination practice. **Concealment, alteration, or destruction of this material may subject him to prosecution.**
>
> I've cc-ed Danielle Rysedorph, Deputy Director, Bureau of Litigation. Please direct all future communication regarding this matter to Ms. Rysedorph or her designee. If you need further assistance connecting with her, I'll be happy to assist.
>
> Thank you,
> Joe Giovannetti

*Id.* ¶¶ 193, 194; Ex. D., ECF No. 16-4 (emphasis in original).

Plaintiff alleges that as of July 15, 2024, he has not regained NYSIIS access. *Id.* ¶ 159.

## II.    THE SUBPOENA

The Subpoena, which Plaintiff seeks to quash, is captioned *In the Matter of Faiz Khan, M.D.* (Inv. No. DOH-0905(c)), and dated June 11, 2024. *See id.* Ex. A, ECF No. 16-1. The Subpoena, issued under New York Public Health Law § 206(4)(a) and § 12, calls for the production of six categories of documents to the New York State Health Commissioner (on or before June 28, 2024). *See id.* Those categories are:

> 1. Any and all order forms, purchase orders, confirmations, invoices, bills, receipts, shipping notices, packing slips, and other records related to the ordering, purchasing, shipping, receipt, and return of any and all of [23 enumerated vaccines] from January 1, 2019, to present;
>
> 2. Any and all records regarding immunization by Dr. Faiz Khan and/or Advanced Medicine of Long Island of the twenty-two (22) individuals whose names and dates of birth are listed in Addendum 1,[3] attached hereto, including but not limited to medical/clinical records (also known as "charts"); appointment/scheduling records; billing records; and communication, correspondence, and/or notes and any other records of communication, from, to, with, or on behalf of the individuals and/or the individuals' guardian(s)/healthcare proxy.
>
> 3. Any and all records related to and documenting the practice of charging patients for the procurement cost of a vaccine and the subsequent division of that cost among future patients who receive vaccines from the same vaccine supply including, but not limited to, spreadsheets, records of cost divisions and calculations of cost, reimbursements, and any and all communications regarding cost variations and reimbursements.
>
> 4. Any and all pamphlets, handouts, guidance documents, informational sheets, and instructions distributed to any and all patients regarding homeopathic alternatives to conventional vaccines.
>
> 5. Records sufficient to identify the name, date of birth, and last-known contact information (address and telephone number) of any and all individuals employed by Faiz Khan, M.D., and/or Advanced Medical Long Island at any time, and for any duration of time, from January 1, 2019, to present.
>
> 6. Completed (i.e., signed and dated) New York State Department of Health New York State Immunization Information System ("NYSIIS") User Agreement form.

---

[3] In attaching the Subpoena to the Amended Complaint, Plaintiff omitted the addendum for confidentiality purposes.

*Id.*

### III.    PROCEDURAL HISTORY

Plaintiff commenced this action on July 8, 2024, and filed the Amended Complaint on July 15, 2024.  *See* Compl., ECF No. 1; Am. Compl.  On October 21, 2024, Plaintiff filed the fully briefed Motion for a Preliminary Injunction and Motion to Quash the Subpoena.  *See* Mot. Prelim. Inj.; Mot. Quash.  On March 14, 2025, Defendants filed the fully briefed Motion to Dismiss.  *See* Mot. Dismiss.  On April 2, 2025, the Honorable Joan M. Azrack referred all three motions to this Court for report and recommendation.  *See* Order Referring Mot., dated April 2, 2025.

On April 24, 2025, Plaintiff filed a letter requesting to submit supplemental information to the Court, and to discuss the filing of a possible second amended complaint.  *See* Pl.'s Letter.  In a letter dated May 1, 2025, Defendants opposed Plaintiff's request.  *See* Defs.' Letter, ECF No. 56.  On May 5, 2025, Judge Azrack referred those letters for this Court to consider in conjunction with the pending motions.  *See* Order Referring Letters, dated May 5, 2025.

### <u>LEGAL STANDARD</u>

This Court will first consider Defendants' Motion to Dismiss because, if the Motion to Dismiss is granted, Plaintiff's Motion for a Preliminary Injunction and Motion to Quash will be moot.  Defendants move to dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rules 12(b)(1) and 12(b)(6) of Civil Procedure, respectively.

### I.    LACK OF SUBJECT MATTER JURISDICTION

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A motion to dismiss based on lack of Article III

standing is properly raised under Rule 12(b)(1) for lack of subject matter jurisdiction. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017).

A Rule 12(b)(1) motion may be either facial or fact-based. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the motion is facial, *i.e.*, based on the allegations of the complaint and any exhibits attached thereto, the plaintiff has no evidentiary burden. *Id.* The court's task is to determine whether the pleading "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* (citation omitted). The court thus accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* at 57. When a defendant makes a fact-based motion, and proffers evidence beyond the pleading "reveal[ing] the existence of factual problems" in the assertion of jurisdiction, a plaintiff must present evidence controverting the alleged jurisdictional defects. *Id.* (citation omitted). Thus, when a defendant makes a fact-based challenge to jurisdiction, the plaintiff "has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113).

## II.    FAILURE TO STATE A CLAIM

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In doing so, the court "must construe [the complaint] liberally, accepting all factual

allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)).  However, allegations that "are no more than conclusions[] are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.

## DISCUSSION

Plaintiff seeks declaratory and injunctive relief for Defendants' alleged violations of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights.  *See generally* Am. Compl. Generally, Plaintiff complains that Defendants violated his rights by engaging in a "systematic pattern of harassment" against him, visiting Advanced Medicine twice without a warrant, questioning Plaintiff in an accusatory manner, serving him with the Subpoena, and shutting down his NYSIIS access.  However, for the reasons discussed below, Plaintiff's claims for relief fail.

## I.    THE AMENDED COMPLAINT VIOLATES FEDERAL RULE 8 OF CIVIL PROCEDURE.

As a preliminary matter, the 86-page, 390+ paragraph-long[4] Amended Complaint (plus exhibits) fails to comply with Federal Rule 8 of Civil Procedure.  Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The rule's purpose "is 'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *SEC v. Hwang*, 692 F.Supp.3d 362, 389 (S.D.N.Y. 2023) (citing *Twombly*, 550 U.S. at 555).  "The statement should be short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  *Steadman v.*

---

[4] Not including sub-paragraphs, of which there are several.  Additionally, some paragraphs are misnumbered, as there are, for example, two paragraphs numbered "196"; there is also a paragraph numbered "320" following the paragraph that is numbered "393."

*Citigroup Glob. Mkts. Holdings Inc.*, 592 F.Supp.3d 230, 244 (S.D.N.Y. 2022) (citing *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

When a complaint does not comply with Rule 8, "the court has the power, on its own initiative or in response to a motion by the defendant, to strike any portions that are redundant or immaterial . . . or to dismiss the complaint." *Salahuddin*, 861 F.2d at 42. "[C]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with [Rule 8] . . . and must be dismissed." *Coon v. Benson*, 9-cv-230, 2010 WL 769226, at *3 (S.D.N.Y. Mar. 8, 2010)). Indeed, "prolix, unintelligible, speculative complaints that are argumentative, disjointed and needlessly ramble have routinely been dismissed in this Circuit." *Shetiwy v. Midland Credit Mgmt.*, 980 F.Supp.2d 461, 467 (S.D.N.Y. 2013) (citation omitted); *see id.* n.8 (collecting cases). However, courts usually "resort to dismissal under Rule 8 when 'the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Hwang*, 692 F.Supp.3d at 389 (citing *Salahuddin*, 861 F.2d at 42).

Here, the Amended Complaint's "true substance" is not necessarily "disguised," as this Court can discern—although not without difficulty—enough from the Amended Complaint to evaluate it against Defendants' Motion to Dismiss. *See id.* Nevertheless, the Amended Complaint is "redundant, argumentative, and has much irrelevancy and inflammatory material. It is excessively long-winded, and its wordiness is unjustified." *Morgens Waterfall Holdings, L.L.C. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 198 F.R.D. 608, 610 (S.D.N.Y. 2001). It is also "rambling and repetitive, jumping back and forth in time and moving from claim to claim in a disjointed fashion." *Rubin v. N.Y.C. Bd. of Educ.*, 20-cv-10208 (LGS) (KHP), 2023 WL 1972729, at *10 (S.D.N.Y. Jan. 6, 2023), *report and recommendation adopted*, 2023 WL 2344731 (S.D.N.Y.

Mar. 3, 2023).  To be sure, this Court has had to wade through pages of legal argument and diatribe to string together the factual allegations that are relevant to the instant motions.  *See id.* (noting that the complaint was not "plain" under Rule 8 where it did not "follow a coherent narrative.").[5]

Plaintiff's style of pleading is especially unjustified where, as here, Plaintiff is represented by counsel.  This Court would be compelled to construe the Amended Complaint with "special solicitude" were Plaintiff proceeding *pro se*—but not so in this case.  *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quotations omitted).

Additionally, the Amended Complaint's "inflammatory accusations against Defendants"— which are largely made without supportive factual allegations—are particularly concerning.  *Keitel v. D'Agostino*, 21-cv-8537 (JMF), 2022 WL 15524665, at *2 (S.D.N.Y. Oct. 27, 2022).  For example, Plaintiff claims that the "true identity" of Defendant Giovannetti, Defendant Cruz, and Defendant Burwell is that they are part of a "hunt team" with "unfettered and unchecked powers and discretion," who "hunt down healthcare practitioners" and have "gathered celebrity status and notoriety."  Am. Compl. ¶¶ 33, 34, 36, 40.  Plaintiff describes Defendants as "living in their own abusive investigative world which is predicated upon bullying and intimidation of unsuspecting medical licensees" such as Plaintiff.  *Id.* ¶ 44.

Similarly, Plaintiff claims that Defendants went on a "witch hunt" against him and are "intoxicated by their own fame and harboring a delusion that they are above the Fourth Amendment."  *Id.* ¶¶ 29, 39.  Plaintiff also asserts that Defendants "harbored the delusion of grandeur that they are vested with unlimited an [*sic*] unfettered powers to harass the Plaintiff

---

[5] Notably, this Court is not the first in this Circuit to observe a Rule 8 issue in pleadings filed by Plaintiff's counsel, Jacques Simon, in similar cases against the same or similar defendants.  *See, e.g.*, Order, ECF No. 28 in *Guggenheim v. McDonald*, 25-cv-3615 (PKC) (S.D.N.Y. June 6, 2025) ("Fortunately, in response to a pre-motion letter filed by defendants, plaintiff has expressed an intent to amend her complaint . . . PLAINTIFF AND HER COUNSEL ARE ADVISED THAT A FAILURE TO ADHERE TO THE 'SHORT AND PLAIN' REQUIREMENTS OF RULE 8(a)(2) IN AN AMENDED COMPLAINT WILL RESULT IN A DISMISSAL WITH PREJUDICE." (caps in original)).

through impromptu interrogations, erroneous insinuations and scare tactics." *Id.* ¶ 40.  Perhaps most dramatically, Plaintiff claims that Defendants "systematically harass anyone who comes into their crosshairs in hopes of obtaining confessions of violations of the law based upon the investigators' knowingly false recitations of the law and false accusations levied against [Plaintiff] about the violation . . . of the same." *Id.* ¶ 43.  Plaintiff also speculates that, during their investigation into him, Defendants "must" have thought to themselves, "what is another constitutional violation between friends, no one is going to challenge us." *Id.* ¶ 295.

While these fiery accusations make for an interesting story, they fail to further Plaintiff's claims for relief.  *See Keitel*, 2022 WL 15524665, at *2 ("Even assuming such allegations [are] true—a far-fetched assumption—many, if not all, of them are irrelevant to Plaintiffs' claims" (citation and quotation marks omitted)); *Rubin*, 2023 WL 1972729, at *10 (holding that a complaint violated Rule 8 where it contained "numerous hyperbolic accusations that have no apparent bearing on Plaintiff's actual claims.").

Ultimately, for this and the reasons explained in the sections that follow, this Court recommends dismissal of the Amended Complaint.  However, in the event that the District Court determines that Plaintiff's claims should survive, this Court would respectfully recommend that the District Court order the filing of a second amended complaint that complies with Rule 8 so as to enable Defendants to answer a pleading which properly puts them on notice of the claims against them.  *See Nygård v. Bacon*, 19-cv-1559 (LGS), 2021 WL 3721347, at *7 (S.D.N.Y. Aug. 20, 2021) (allowing the plaintiff to seek leave to replead where the complaint's allegations were "too lengthy, conclusory and confusing to put Defendant on notice of the claims against him.").  Alternatively, this Court would respectfully recommend striking the "redundant, immaterial, impertinent, or

scandalous matter" within the Amended Complaint before requiring Defendants to answer it.  Fed. R. Civ. P. 12(f).

## II.    PLAINTIFF LACKS STANDING TO PURSUE PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF.

Turning to the issues raised in the Motion to Dismiss, Defendants argue that Plaintiff lacks Article III standing to seek prospective declaratory and injunctive relief.  "Standing is 'the threshold question in every federal case.'"  *Cohan v. Movtady*, 751 F.Supp.2d 436, 439 (E.D.N.Y. 2010) (citing *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008)).  If Plaintiff lacks standing, this Court has no subject matter jurisdiction to hear this case and must dismiss it without prejudice.  *See John*, 858 F.3d at 735; *Carter*, 822 F.3d at 54 ("where a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice.").

### A.    Standard for Standing

"[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury" to have standing.  *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *see Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) ("[t]o obtain *prospective* relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia,* 'a sufficient likelihood that he or she will again be wronged in a similar way'" (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983))).  "That is, a plaintiff must demonstrate a 'certainly impending' future injury."  *Marcavage*, 689 F.3d at 103 (citations omitted).  "In establishing a certainly impending future injury, a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be prevented by the equitable relief sought."  *Id.*; *An v. City of New York*, 230 F.Supp.3d 224, 232 (S.D.N.Y. 2017) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy standing's injury requirement but must show a likelihood that he or

15

she will be injured in the future.") (citing *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)); *see Guan v. Mayorkas*, 530 F.Supp.3d 237, 256 (E.D.N.Y. 2021) (holding that the plaintiffs were not entitled to a declaratory judgment that the defendants' past conduct was unlawful).  To establish an injury sufficient to confer standing, a plaintiff may not simply "recast[] a past harm as a continuing one." *Dorce v. City of New York*, 2 F.4th 82, 96 (2d Cir. 2021).

Moreover, "conjecture or subjective fear that a plaintiff is in danger of sustaining an injury is not sufficient to confer standing; the threat must be 'sufficiently real and immediate to show an existing controversy.'" *Jacobs v. Ali*, 18-cv-2909 (RRM), 2021 WL 12147769, *6 (E.D.N.Y. June 22, 2021) (citing *Lyons*, 461 U.S. at 103); *see Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) ("abstract injury is not enough").  "Even a reasonable susceptibility" to such similar injury "does not translate into the requisite 'real and immediate threat of future injury.'" *Heggs v. City of New York*, 17-cv-3234 (DG) (TAM), 2023 WL 9786044, at *13 (E.D.N.Y. Aug. 24, 2023) (citing *MacNamara v. City of New York*, 275 F.R.D. 125, 141 (S.D.N.Y 2011)), *report and recommendation adopted*, 2024 WL 759439 (E.D.N.Y. Feb. 23, 2024).

**B.    The Parties' Positions**

At bottom, Plaintiff seeks injunctive relief to enjoin Defendants from prospectively engaging in the conduct described above—*i.e.* their investigation into Plaintiff—and to reinstate Plaintiff's NYSIIS access.  *See generally* Am. Compl.  Additionally, Plaintiff seeks a declaratory judgment declaring Defendants' conduct, the Subpoena, and the statute under which the Subpoena was issued, unlawful.[6]  *See generally id.*

In moving to dismiss, Defendants argue that Plaintiff lacks standing to pursue his prospective relief claims, as they arise solely from *past* conduct that took place between April 2024

---

[6] As this Court discusses *infra* Discussion § III., Plaintiff also seeks to quash the Subpoena.

and June 2024.  Indeed, Defendant Cruz and Defendant Burwell went to Advanced Medicine on April 29, 2024, and June 12, 2024; Plaintiff allegedly lost NYSIIS access in early June 2024; and Defendant Cruz and Defendant Burwell served the subpoena on Plaintiff on June 12, 2024.  Am. Compl. ¶¶ 80, 151, 160, 188.  Indisputably, all of these events occurred before the Amended Complaint's filing.

In response, Plaintiff argues that Defendants' violations of his constitutional rights are ongoing.  Specifically, Plaintiff argues that paragraphs 125–159, 290–321, and 324–361 of the Amended Complaint sufficiently allege that the Fifth and Fourteenth Amendment violations are prospective, and that paragraphs 189–289 of the Amended Complaint sufficiently allege that the Fourth Amendment violations are prospective.  *See* Pl.'s Mem. Opp'n at 4, ECF No. 53-2.

At the outset, this Court notes that to the extent that any of Plaintiff's cited allegations conclusorily assert that Defendants' actions "continue" to harm Plaintiff, such allegations cannot support standing, as they "fall[] short of establishing a 'likelihood' of future injury."  *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 448 (2d Cir. 2021).  Plaintiff's allegations must offer an actual reason to believe that he faces a sufficient likelihood of future harm.  *See id.*

## C.  Plaintiff Lacks Standing to Seek Prospective Relief.

Ultimately, Plaintiff lacks standing to pursue his requested prospective relief, as he has failed to establish that any of the events described in the Amended Complaint will result in "certainly impending future injury."  *Marcavage*, 689 F.3d at 103.  The events in question occurred in the past, and Plaintiff has made no allegations suggesting they will certainly result in future harm so as to confer standing to seek prospective relief.

Moreover, to the extent that Plaintiff claims he suffers injury due to the purported illegality of Defendants' conduct, such claims fail.  A plaintiff "does not have standing to challenge a

government regulation"[7] or action "simply because the plaintiff believes that the government is acting illegally." *All. for Hippocratic Med.*, 602 U.S. at 381; *see id.* ("A citizen may not sue based only on an 'asserted right to have the Government act in accordance with law.'" (citation omitted)). Rather, a plaintiff seeking declaratory and injunctive relief from an allegedly illegal government action must establish nevertheless that such an action will injure the plaintiff in the future. *See Dorce*, 2 F.4th at 95–96 (holding that the plaintiffs did not have standing to obtain declaratory and injunctive relief from a purportedly unconstitutional government program where the plaintiffs failed to allege that the program would injure them in the future). Plaintiff fails to do so here.

Specifically, with respect to Defendants' general investigation and visits to Advanced Medicine, the only allegations in the Amended Complaint supporting Plaintiff's requested relief are *past* incidents. Plaintiff alleges that Defendant Burwell and Defendant Cruz went to Advanced Medicine in April and June of 2024, wherein they allegedly questioned Plaintiff, recorded a conversation with him, took photos of the vaccine storage area, and served him with the Subpoena, among other things. *See generally* Am. Compl.[8] However, these alleged "'past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy' with respect to potential future similar wrongs." *Dorce*, 2 F.4th at 96 (citing *Lyons*, 461 U.S. at 103).

Meanwhile, the Amended Complaint is otherwise devoid of any facts suggesting that Defendants are going to return to Advanced Medicine, or that they would return under similar circumstances to the previous visits. As such, any proposition that Defendants will return is hypothetical and conjectural. Without allegations suggesting otherwise, Plaintiff cannot show that

---

[7] Such as Public Health Law §§ 206(4)(a) and 12-a(1), the statute under which the Subpoena was issued.
[8] Even Plaintiff acknowledges, in the Amended Complaint, that Defendants' past visits to Advanced Medicine "are not redressable by injunctive relief." Am. Compl. ¶ 337. Plaintiff also admits that the "past constitutional violations are alleged to give context to the lawsuit and not for the purposes of obtaining any relief." Pl.'s Mem. Opp'n at 7.

he faces certainly impending future injury. Therefore, Plaintiff does not have standing to pursue claims for prospective relief related to Defendants' future investigation and visits to Advanced Medicine. *See Jacobs*, 2021 WL 12147769, at *6 (holding that the plaintiff's "unsupported speculation" that he might be subjected to something unlawful in the future was insufficient to confer standing).

Perhaps Plaintiff's strongest argument that he is suffering an "ongoing" injury is with respect to his NYSIIS access, which had not been restored as of the Amended Complaint's filing. *See* Am. Compl. ¶ 159. The problem for Plaintiff, however, is that he has failed to plausibly establish that losing NYSIIS access will, indeed, cause him a future injury, in light of the Amended Complaint's many allegations downplaying Plaintiff's vaccination practice.

For example, according to the Amended Complaint, Plaintiff "does not routinely vaccinate his patients." *Id.* ¶ 88. In fact, his practice is "not a routine vaccination practice," "does not focus on vaccinations," and "does not have [a] surplus back-up stock" of vaccines. *Id.* ¶¶ 70, 109. Plaintiff even states that his patients "could be categorized as *vaccine hesitant*." *Id.* ¶ 92 (emphasis in original).[9]

Rather than focus on vaccinations, Plaintiff's practice goals—as he explained to Defendant Cruz and Defendant Burwell—"involve using complementary and allopathic medicine modalities to treat chronic disease conditions – neurodegenerative, immune dysregulations, endocrine/fatigue problems, cancer support, orthopedic complaints, chronic pain, autism and others." *Id.* ¶ 88.

---

[9] Plaintiff also devotes multiple pages of his Amended Complaint to discussing problems associated with Covid-19 vaccines, suggesting that Covid-19 vaccinations are not a significant component of Plaintiff's practice (if at all a component). *See id.* ¶¶ 95–108. Indeed, Plaintiff believes that the "disproportionality of vaccine injuries and death related to COVID 19 vaccines when compared with the vaccine injuries for all vaccines" is "nothing short than frightening." *Id.* ¶ 100.

While Plaintiff admits to having previously vaccinated patients, *see e.g.*, *id.* ¶ 150, it is implausible that losing NYSIIS access will cause Plaintiff future harm when his own allegations go to great lengths to minimize the role and frequency of vaccinations at his practice. How could Plaintiff be facing "certainly impending future injury" in losing NYSIIS access when he does not "routinely" vaccinate patients? *Id.* ¶ 88. Even construing these allegations in his favor, Plaintiff simply cannot have it both ways. After all, a "merely hypothetical and conjectural" injury does not "rise to the level of being plausible." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 148 (2d. Cir. 2011). Accordingly, Plaintiff's allegations regarding his own vaccination practice are not plausibly pleaded so as to confer standing. *See id.*; *Larsen v. Berlin Bd. of Educ.*, 588 F.Supp.3d 247, 256 (D. Conn. 2022) ("a court need not credit . . . contradictory allegations"); *see also Hibbert v. Cap. One Auto Fin.*, 23-cv-7538 (OEM), 2024 WL 3498536, at *3 (E.D.N.Y. July 22, 2024) ("the Court need not credit allegations where . . . the 'threadbare assertions are conclusory and do not raise a reasonable inference of injury.'" (citing *Calcano v. Swarovski N.A. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022))).

Additionally, for largely all the reasons already discussed, Plaintiff has failed to establish that he faces "certainly impending future injury" from Plaintiff's alleged "systematic pattern of harassment and threats" so as to have standing to seek prospective relief. Am. Compl. ¶ 348; *see id.* ¶ 363. In alleging that Defendants are engaged in a systematic pattern of harassment, Plaintiff relies heavily on his allegation that Defendant Giovannetti sent "an unwarranted threat" in an email to Plaintiff's counsel on July 10, 2024. *Id.* ¶ 192.

However, the email itself, which Plaintiff attached to his Amended Complaint,[10] practically forecloses the possibility of future injury arising from the "systematic pattern of harassment." *See*

---

[10] "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit . . . ." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

*id.* Ex. D.  Defendant Giovannetti's email, which was sent in response to an email from Plaintiff's counsel, advises Plaintiff's counsel to "direct all future communication" to the Deputy Directory of the DOH Litigation Bureau, suggesting that there would only be communication through counsel moving forward.  *Id.*  To that end, the Amended Complaint itself contains no factual allegations suggesting that Defendants will, in the future, contact Plaintiff directly.

Additionally, the text of the email itself contradicts the Amended Complaint's allegations.  *See id.* ¶ 193.  According to the Amended Complaint, Defendant Giovannetti, in his email, "actually told Dr. Khan's attorney . . . that the attorney should advise Dr. Khan regarding Giovannetti's accusation of destruction of medical records and threatened further prosecution without any evidence that such intended destruction has taken or will be taking place at any time."  *Id.*  The Amended Complaint also alleges:

> It is astounding that the defendant Giovannetti actually continued his pattern of harassment after the commencement of this action knowing that his conduct will be scrutinized by this Court. His email is nothing short than proof of the actual nature of the interactions between the investigators and Dr. Khan which violated and continue to violate Dr. Khan's constitutional rights.

*Id.* ¶ 194.

The *text* of the email, however, tells a different story.  *See id.* Ex. D.  Defendant Giovannetti's email reads:

> Counsel,
>
> You misspelled my email address below. Presumably the error is why you were unsuccessful in reaching me prior. Please see the subpoena that was served on your client, and which you attached to your filing, for the correct spelling.
>
> Please instruct your client to preserve all material in his possession relevant to our subpoena and his vaccination practice. **Concealment, alteration, or destruction of this material may subject him to prosecution.**

> I've cc-ed Danielle Rysedorph, Deputy Director, Bureau of Litigation. Please direct all future communication regarding this matter to Ms. Rysedorph or her designee. If you need further assistance connecting with her, I'll be happy to assist.
>
> Thank you,
> Joe Giovannetti

*Id.* (emphasis in original).

As Plaintiff rightly predicted, this Court is "scrutinizing" Dr. Giovannetti's email (as Plaintiff attached the email to the Amended Complaint). *See id*. However, even drawing all inferences in Plaintiff's favor, this Court can only interpret Defendant Giovannetti's email to essentially be a cautionary litigation hold notice—not a threat or accusation. The email does not suggest that Plaintiff faces a certainly impending future injury and, if anything, actually renders implausible Plaintiff's allegations to the contrary. *See Larsen*, 588 F.Supp.3d at 256 ("a court need not credit . . . contradictory allegations.").

In sum, Plaintiff has failed to establish that he faces a certainly impending future injury, and thus lacks standing to seek prospective injunctive and declaratory relief.

### III. PLAINTIFF'S CAUSE OF ACTION SEEKING TO QUASH THE SUBPOENA IS NOT RIPE.

In a purported cause of action brought under Federal Rule 45 of Civil Procedure and the federal declaratory judgment statute, Plaintiff also seeks an order revoking and quashing the Subpoena. *See* Am. Compl. ¶¶ 196–289. However, Plaintiff's request for such an order is premature and thus not ripe for adjudication.

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 130 (2d Cir. 2008) (Sotomayor, J.) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003)). "A central purpose of this doctrine is to prevent the

courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Id.* at 130–31 (citation omitted).

As relevant here, courts have found that seeking to quash an administrative subpoena is premature, and thus not ripe for judicial review, where the government agency has issued the subpoena, but not yet sought to enforce it. *See Mohammadi v. Tong*, 24-cv-01473-KAD, 2025 WL 1029862, at *2 (D. Conn. Apr. 7, 2025) (collecting cases); *see id.* (holding that request to quash a subpoena was premature where the party was not yet required to comply with subpoena). For example, in *Google, Inc. v. Hood*, the Mississippi State Attorney General issued an administrative subpoena to Google seeking documents and answers to interrogatories. *See* 822 F.3d 212, 218, 219 (5th Cir. 2016). "[W]ithout further responding to the administrative subpoena or seeking relief in state court," Google sued the Mississippi AG in federal court to challenge the subpoena. *Id.* at 219. As the Mississippi AG had not yet brought an action to enforce the subpoena, however, the Fifth Circuit found that Google's challenge to the administrative subpoena was not ripe for judicial review, and that the district court had thus erred in not rejecting Google's pre-enforcement challenge. *See id.* at 224–26.

Similarly, in *Schulz v. I.R.S.*, the plaintiff had commenced an action to quash a series of administrative summonses from the IRS seeking testimony and documents. *See* 395 F.3d 463, 464 (2d Cir. 2005) (per curiam). The Second Circuit held that the plaintiff's challenge to the summonses did not amount to a case and controversy subject to judicial review, as the IRS had not yet initiated a procedure to enforce the summonses against the plaintiff. *See id.* Although the court did not assess whether the plaintiff's challenge to the summonses was "ripe," the court found that prematurity of the plaintiff's challenge meant that the plaintiff was not threatened with an injury, and thus there was no case or controversy entitling plaintiff to seek relief. *See id.* at 464–65.

23

In *Exxon Mobil Corp. v. Schneiderman*, the court held, applying *Hood* and *Schulz*, that the plaintiff's challenge to a subpoena issued by the New York State Attorney General *was* ripe for judicial review where a New York State court had previously ordered the plaintiff to comply with the subpoena by producing documents and giving testimony. *See* 316 F.Supp.3d 679, 695–96 (S.D.N.Y. 2018). The court further held that because the plaintiff could not "refuse to respond to the document demands without consequence,"—namely, sanctions for failing to comply with the state court's orders—the plaintiff's claims were ripe. *Id.* at 696.

Here, the only substantive, non-conclusory factual allegation regarding the Subpoena is that Defendant Cruz and Defendant Burwell served it on Plaintiff on June 12, 2024. Am. Compl. ¶ 188. Plaintiff does *not* allege that Defendants have sought to enforce the subpoena, let alone follow up on it. In fact, in his opposition to the Motion to Dismiss, Plaintiff concedes this point— even citing *Hood* in doing so. *See* Pl.'s Mem. Opp'n at 22. Plaintiff's opposition reads, in relevant part:

> Moreover, where the defendants merely served a subpoena and have not yet moved in state court to enforce it, *Younger* abstention clearly does not apply. As of now, defendants have not moved to enforce the administrative subpoena in any state court, **nor has any judicial or quasi-judicial tribunal begun proceedings against** the Plaintiff. *Google, Inc. v. Hood*, 822 F.3d at 223 supra citing *Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S. Ct. 2206, 119 L. Ed.2d 468 (1992) (holding *Younger* abstention clearly erroneous "[a]bsent any pending proceeding in state tribunals").

*Id.* (emphasis in original).

As such, and by Plaintiff's own concession, Plaintiff's purported cause of action seeking to quash the subpoena is not ripe for adjudication. Should Defendants eventually seek to enforce or otherwise compel Plaintiff's compliance with the Subpoena, Plaintiff will remain free to challenge the Subpoena at that time—which Defendants concede. *See* Reply at 4, ECF No 53-4 ("assuming for the sake of argument that Defendants did seek to enforce the Subpoena in the future,

24

Khan would have notice of such action, [and] an opportunity to object . . . ."). For now, however, Plaintiff's attempt to seek relief from the Subpoena is premature.

## IV.    OTHER GROUNDS FOR DISMISSAL

Defendants also move to dismiss the Amended Complaint on Eleventh Amendment grounds, and for Plaintiff's failure to state a claim. Given this Court's lack of subject matter jurisdiction over this case—due to Plaintiff's failure to establish Article III standing, as well a case or controversy ripe for judicial review with respect to his claim seeking to quash the Subpoena[11]— this Court need not address Defendants' other arguments for dismissal at this time. *See Dees v. Zurlo*, 24-cv-1 (MAD), 2024 WL 2291701, at *13 (N.D.N.Y. May 21, 2024) ("there is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed.").

## V.    PLAINTIFF'S PROPOSED ADDITIONAL SUBMISSIONS

On April 24, 2025, Plaintiff filed a letter with the Court seeking leave to submit a "supplemental certification" and additional memorandum of law in support of the Motion for a Preliminary Injunction and in opposition to the Motion to Dismiss. *See* Pl.'s Letter. Plaintiff's letter also requested a pre-motion conference to discuss the filing of a possible second amended complaint. *See id.* Defendants opposed Plaintiff's requests. *See* Defs.' Letter.

To summarize, Plaintiff's letter seeks to inform the Court of a recent development. Apparently, Defendants have since placed Plaintiff's name on what Plaintiff calls, "a public branding list." *See* Pl.'s Letter, Ex. A. The list in question is a web post from the DOH website entitled "School Vaccination Fraud Awareness." *See id.* Under a subheading entitled, "Be aware when reviewing school vaccination records," there is a list of healthcare providers, each

---

[11] Not to mention the Amended Complaint's failure to comply Rule 8. *See supra* Discussion § I.

accompanied by a warning specific to the particular provider. *See id.* Plaintiff is listed among the providers as follows:

> Faiz Khan, MD (Advanced Medicine of Long Island) Currently suspended from using the New York State Immunization Information System as of 5/30/2024. Paper-only records of vaccinations administered after this date from this provider must not be accepted.

*Id.*

Plaintiff asserts that this web post is a "continuous violation" of his due process rights, and that the web post "label[s] and designate[s] the Plaintiff as an individual involved in both criminal and disciplinary conduct of vaccine fraud." *See id.* at 2. Plaintiff complains that this "branding" is made without: the due process afforded to him under Public Health Law § 12-a; a formal hearing or determination of misconduct by the State Board of Professional Medicinal Conduct under Public Health Law § 230 and State Administrative Procedure Act §§ 301–401; any trial and criminal conviction of vaccine fraud; and "anything at all short of the unsupported summary official action taken by the state defendants on this web site." *Id.* Plaintiff further contends that Defendants "have no statutory authority to maintain this website, to summarily convict and punish medical licensees in such a summary fashion by publication and without due process while restricting Plaintiff's license in the manner stated in the posting." *Id.*

As a preliminary matter, this Court clarifies that, despite Plaintiff's description, the web post does not state that Plaintiff has been convicted of a crime. *See generally id.* As a practical matter, however, this additional submission does not save Plaintiff's claims, as this later development does not impact the Court's original standing analysis.

"[S]tanding is to be determined as of the commencement of the suit." *Lujan v. Defs.' of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *see Hargrave v. Vermont*, 340 F.3d 27, 34 n.7 (2d Cir. 2003)

("standing determinations must be made on the basis of what was known at the time a suit was initially filed"); *see also Metcalf v. TransPerfect Translations Int'l, Inc.*, 632 F. Supp. 3d 319, 337 (S.D.N.Y. 2022) ("It is black-letter law that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'" (citation omitted)).  While this web post may very well have injured Plaintiff, Plaintiff did not make allegations suggesting that such was a "certainly impending future injury" at the time he filed the Amended Complaint.  Accordingly, this Court cannot account for the web post in determining whether Plaintiff has standing to sue, and thus the fact remains that this Court lacks subject matter jurisdiction over this case.  Therefore, any supplemental "certification" or memorandum of law that Plaintiff could file regarding this web post would be futile.

Relatedly, as this Court lacks subject matter jurisdiction, Plaintiff should not be granted a premotion conference to discuss the filing of another amended complaint.  *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 422 (2d Cir. 2015) ("A court may not permit an action to continue, even where the jurisdictional deficiencies have been subsequently cured, if jurisdiction was lacking at the commencement of a suit" (citations and quotations omitted)); *see id*. (noting that the District Court could not have permitted an amended complaint where there was no valid lawsuit to begin with).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court respectfully recommends that the District Court GRANT the Motion to Dismiss, dismiss the Amended Complaint without prejudice, and DENY as moot the Motion for a Preliminary Injunction and Motion to Quash.  This Court further respectfully recommends that the District Court deny Plaintiff's request to submit a "supplemental

certification" and additional memorandum of law, as well as Plaintiff's request for a premotion conference regarding the filing of a possible second amended complaint.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, 15-cv-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**


_/s_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York


Dated: Central Islip, New York
          August 29, 2025.